[Civil No. 4490.   Filed May 3, 1943.]

[137 Pac. (2d) 395.]

W. H. LINVILLE, as Treasurer and ex-officio Tax Collector of the County of Maricopa, State of Arizona; and THE STATE OF ARIZONA, Appellants, v. M. B. CHENEY, Appellee.

Mr. Joe Conway, Attorney General, Mr. Earl Anderson, Special Assistant Attorney General; Mr. Richard F. Harless, former County Attorney, Mr. Charles B. McAlister, his deputy; Mr. Harold R. Scoville, present County Attorney, and Miss Loretta C. Savage, his Deputy, for Appellants.

Messrs. Wilson & Wilson, for Appellee.

ROSS, J.—On or about February 1, 1938, the county treasurer of Maricopa County sold or struck off to The State of Arizona, as provided by statute (section 73–806, Arizona Code 1939) Lot 3, Section 2, Township 2 North, Range 4 East, Gila & Salt River Base & Meridian, Maricopa County, Arizona, for delinquent taxes due and owing thereon for the years 1931, 1932, 1933, 1934 and 1935. This property had been assessed for those years, and previous years, to James O'Donnell as owner. The validity of the levy and assessment of the taxes is admitted, those for 1931–1935 as well as those for previous years.

The plaintiff M. B. Cheney is the assignee from the state of the county treasurer's certificate of purchase, having paid the state therefor the sums mentioned in section 73–817, to wit, taxes, delinquent charges, costs, etc.

The taxes on the property for 1921 in the sum of $51.44, for 1922 in the sum of $21.67, for 1923 in the sum of $42.69 and for 1931 in the sum of $29.42 are unpaid and delinquent.

The question is as to whether these last taxes are a lien on the property, notwithstanding the sale of property to plaintiff's assignor for delinquent taxes for the years 1931 to 1935 inclusive.

There can be no question as to plaintiff's right to have a deed of the property under the sale to and the assignment by the state to him. The real purpose

of the action is to secure a decision as to whether the delinquent taxes for 1921, etc., still remain a lien on the property, and that is the question we are to decide.

The trial court held under the facts stated above that the state has no lien for delinquent taxes on the property for years prior to February 1, 1938, and such holding was based in part upon section 73–820, reading as follows:

"*Aggregate amount of all unpaid taxes included.*— The delinquent taxes for which real property shall be sold pursuant to the provisions of this act shall not be confined to the unpaid taxes for any certain year or years, but it shall be the duty of the county treasurer to advertise and sell any such real estate for the aggregate amount of all unpaid taxes becoming delinquent during each and every preceding year, including any year prior to the passage of this act, together with all penalties, interest and charges respectively due thereon under this or any prior law, whether or not said aggregate amount, or any part thereof, has, or shall have been, reduced to judgment; provided, that failure to include the unpaid taxes becoming delinquent during any year shall not invalidate a sale for unpaid taxes becoming delinquent during any other year or years, and provided further, that no sale for unpaid tax shall be commenced at a date later than five (5) years after delinquency, unless advertised, as herein provided, within said five (5) year period."

We are satisfied that the five-year limitation in the section, if constitutional, affects the remedy only and not the right. It does not liquidate or wipe out a tax lawfully imposed on property as is the case here. It only prohibits the sale of property for delinquent taxes, unless such property is advertised for sale (as herein provided) within five years of date of delinquency. At most, it affects the remedy for the collection of the taxes. This is definitely deter-

mined in *Maricopa County* v. *Bloomer,* 52 Ariz. 28, 78 Pac (2d) 993, 994, wherein we said

" . . . It is universally recognized that statutes of limitations do not affect the validity of the obligation, but merely the remedy given by law for its enforcement. *Masury & Son* v. *Bisbee Lbr. Co.,* [49 Ariz. 443] 68 Pac. (2d) 679; *City of Bisbee* v. *Cochise County,* [52 Ariz. 1], 78 Pac. (2d) 982."

Section 73-506 reads in part as follows:

"Every tax levied under the authority of this chapter upon real or personal property shall be a lien upon the property assessed. The lien shall attach on the first Monday in January in each year, and shall not be satisfied or removed until such taxes, penalties, charges and interest are all paid, or the property has finally vested in a purchaser under a sale for taxes. . . . "

■■ We have held that this means just what it says, that is, the lien for taxes continues until the taxes are paid. *Ingraham* v. *Forman,* 49 Ariz. 29, 63 Pac. (2d) 998; *Maricopa County* v. *Arizona Tractor & Equipment Co.,* 56 Ariz. 518, 109 Pac. (2d) 618. Under these authorities, the delinquent taxes for 1921, 1922, etc., remain a lien upon the property until they are paid, and the only way we know in which the plaintiff can get a clear title to the land is by paying said delinquent taxes.

■ Plaintiff does not claim that the right to redeem will be cut off until a deed has been executed and delivered to him, his heirs or assigns, as provided in sections 73-831, 73-832, 73-833, but argues that when a deed is executed and delivered thereunder the right to redeem no longer exists. This proposition may be granted but it will not aid plaintiff. The right to redeem runs to the owner of the property, his heirs, assigns or successors. This "right to redeem from such sale," section 73-831, may be cut off or fore-

closed but that does not touch or affect the tax liens of the state on property for previous years, or for any years except those included in the foreclosure proceeding.

Plaintiff also claims that the legislature, in Chapter 54, Laws of 1941 (an amendment to the law "relating to actions to quiet title"), intended to afford a remedy to "landowners who had attempted to remove the lien for taxes upon their land for the period prior to the five years mentioned in section 73–820," *supra*. We think a fair construction of the chapter supports this statement of plaintiff's counsel. In other words, it is an act to relieve persons who purchase land at tax sales from paying any taxes except those accruing subsequent to those for which the premises were sold. Said chapter, omitting title, reads as follows:

"Section 1. Article 14, chapter 27, Arizona Code of 1939, (Article 8, chapter 93, Revised Code of 1928), is amended by adding section 27–1404.

"27–1404. *Jurisdiction Of Court To Enter Decree.* In any action which may be brought to quiet title to real property, if the complaint shall set forth that any person or the State of Arizona has or claims an interest in or lien upon the real property, and that said interest or lien or the remedy for the enforcement thereof is barred by limitation, or that the plaintiff would have a defense by reason of limitation to any action to enforce said interest or lien against said real property, the court shall hear evidence thereon and if it shall be proven that said interest or lien or the remedy for the enforcement thereof is barred by limitation, or that the plaintiff would have a defense by reason of limitation to any action to enforce said interest or lien against said real property, then the court shall have jurisdiction to enter a decree and the plaintiff shall be entitled to have a decree of the court barring and forever estopping the assertion of said interest or lien in or to or upon said real property adverse to the plaintiff."

■ In numerous decisions we have held the five-year limitation in section 73–820 affects the remedy only and that the right of the state to the taxes was not abolished by that section. There is no doubt that the purpose of chapter 54 was to amend section 73–820 to abolish both the right and the remedy of the state to collect delinquent taxes if they accrued before the taxes for which the property was sold accrued.

■ ■ The effect of these two legislative acts, if valid, would be to cancel the claim of the state for taxes due on land for years prior to 1931. There is no question but that the taxes for those years were due and owing the state. Other property owners of the state had been assessed in the same way and had paid their taxes. There is no provision in law exempting the property from taxation. Section 2, Article IX of the Constitution enumerates the property that is exempt from taxation, and property in private ownership, with exceptions therein named, of which this is not one, is taxable. Such section contains this sentence:

"All property in the state not exempt under the laws of the United States or under this constitution, or exempt by law under the provisions of this section shall be subject to taxation to be ascertained as provided by law."

So, under the constitution, the property was not exempt, and could not be for the years 1921 to 1931, from paying taxes. The property clearly falls within the words "All property in the state . . . shall be subject to taxation to be ascertained as provided by law." § 2, Art. IX, *supra*. Section 1 of the same article of the constitution reads:

"The power of taxation shall never be surrendered, suspended, or contracted away. All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax, and shall be levied and collected for public purposes only."

■ The indirect method adopted by the legislature of barring the state's right to collect the taxes is just as inimical to the above provision of the constitution as if it had been direct. The legislation relied on destroys uniformity upon the same class of property in the same taxing unit, in direct violation of this constitutional provision. It discriminates against the property owner who promptly pays his taxes as provided by law in favor of the one who fails in his duty and allows his property to become delinquent.

Under plaintiff's contention, the county treasurers of the different counties of the state are given a power over the collection of delinquent taxes that we think was not intended by the legislature. They may, under such contention, favor the speculator in tax sales by advertising and selling the delinquent property for the last year of a dozen or more years of delinquency instead of for all delinquencies, and the purchaser at such sale, or his assigns, after obtaining a deed of the delinquent property, would have good title, free from taxes of previous years.

The section of the statute that has demanded and received the most attention in this opinion, to wit, section 73–820, provides "that failure to include the unpaid taxes becoming delinquent during any year shall not invalidate a sale for unpaid taxes becoming delinquent during any other year or years."

■ Confirmatory of what we have heretofore said is section 73–822 authorizing the board of supervisors to compromise the taxes when it shall appear that the real estate "is not worth the amount of taxes, interest, costs, and penalties due thereon, as charged in said back tax book, or that the same would not sell for that amount." This provision seems to be the only one passed by the legislature authorizing a settlement for less than the taxes, interest, etc., and it is based

upon the determination by the board that the real estate is not worth such amounts.

For the foregoing reasons, we are of the opinion that the taxes on the O'Donnell piece of land for the years 1921 to 1931 remain and are a lien upon said property, and, accordingly, the judgment of the lower court is reversed and the cause remanded with directions that judgment be entered in accordance with this opinion.

McALISTER, C. J., and STANFORD, J., concur.