457 P.2d 714

**Harry KIPNIS, Appellant,**

v.

**COUNTY OF MARICOPA, Buckeye Water
Conservation & Drainage District, Appellees.**

No. 1 CA–CIV 724.

Court of Appeals of Arizona.

Aug. 11, 1969.

Rehearing Denied Sept. 8, 1969.
Review Granted Nov. 18, 1969.

Hughes, Hughes & Conlan, by Coit I. Hughes, Phoenix, for appellant.

Robert K. Corbin, County Atty., Maricopa County, Phoenix, by Frederic W. Heineman, Deputy County Atty., for Maricopa County.

John S. Schaper, Phoenix, for Buckeye Water Conservation & Drainage Dist.

MOLLOY, Judge.

The question before us is whether unpaid assessments levied by an irrigation district on land while it was owned by the State and leased to others remained a charge on the land after it was purchased from the State by appellant.

We are concerned with 80 acres of land within the area served by the Buckeye Water Conservation & Drainage District, an irrigation district organized pursuant to Ch. 6 of Tit. 45 of our Revised Statutes also possessing drainage powers.[1] The State of Arizona owned the land in question for many years prior to 1959, and leased it to a succession of lessees, not including appellant. In the years 1925 through 1935, and in 1946 and 1947, while the land was so leased, the irrigation district levied assessments on the land totaling $620.62. Early in this litigation, the appellee county took the position that these assessments were levied pursuant to A.R.S. § 45–1310. That statute, however, pertains to assessments made by drainage districts, organized pursuant to Ch. 5 of Tit. 45,

---

1. *See* A.R.S. §§ 45–1503, 45–1505, subsec. C and 45–1579. The district here involved was described as an " * * * irrigation and drainage district * * * " in Day

v. Buckeye Water Conservation and Drainage District, 28 Ariz. 466, 469, 237 P. 636, 637 (1925).

and the county later amended its position to be that all of the assessments were levied for the maintenance and operation of an irrigation district. The authority for such assessments is found in Art. 8, of Tit. 45, Ch. 6, A.R.S. § 45–1712 et seq.[2] None of the assessments were paid. The record does not show that the irrigation district ever undertook to effectuate collection of any of the assessments against any of the incumbent lessees by foreclosure of their leaseholds or by any other remedy.

Appellant purchased the land from the State in 1959, in accordance with the provisions of Art. 3, of Ch. 2, Tit. 37, of the Revised Statutes, pertaining to the sale of state lands. The purchase price was $60,-000, and the estate acquired included unidentified improvements on the land which were appraised at $7,975. The certificate of purchase issued to appellant by the State Land Department pursuant to A.R.S. § 37–244 provided that "The purchaser agrees to pay all future taxes, water assessments or charges which may be assessed against said land, or the water right thereto * * *" The word "future" in the foregoing provision is a typewritten insertion on an otherwise printed form.

Shortly after issuance of the certificate of purchase, the Maricopa County Treasurer, collecting agency for the irrigation district (A.R.S. § 45–1711, subsec. B), presented appellant with back tax bills covering the assesssments in question, plus interest in the amount of $1,649.30, for a total liability of $2,269.92. Appellant paid the entire amount, under protest, and brought this action against the appellee county to recover the payment. The county joined the irrigation district as a third-party defendant, praying for a judgment over against the irrigation district in the amount of any judgment rendered against it. The irrigation district counterclaimed against the county for the amount of the tax collected, alleging that it had never been paid over to the district.

The case was tried to the court, sitting without a jury, after which judgment was rendered in favor of the county and against appellant. No findings of fact or conclusions of law were requested or propounded. The irrigation district took an active part in defending against appellant's claim in the trial court. The district was designated an appellee by appellant and has filed a brief in opposition to appellant's in this court.

The county does not contend that it is not the proper party for appellant to sue to recover his payment, and there is accordingly no need for us to consider the authorities on that subject, many of which were recently cited and discussed in Southern Pacific Co. v. DeWitt, 288 F.Supp. 570 (D.Ariz.1968), at 579–582. The county does advance a contention that appellant's failure to file a written demand with the board of supervisors, pursuant to A.R.S. § 11–622, as amended, prior to commencing suit against it is fatal to his claim, but the same contention in a suit to recover payment of an allegedly illegal and excessive tax was made and rejected in Arizona Eastern R.R. Co. v. Graham County, 20 Ariz. 257, 179 P. 959 (1919).

Appellant acknowledges that a leasehold interest in land owned by the State is lawfully taxable, see Maricopa County v. Fox Riverside Theatre Corp., 57 Ariz. 407, 114 P.2d 245 (1941), and apart from the fail-

---

2. Assessments to defray current expenses of the district pursuant to Art. 8 are generally referred to therein as "taxes." Another type of assessment is described in Art. 9 and is referred to as a "district assessment." See § 45–1751 et seq. These latter assessments may also be levied for, among other purposes, " * * * maintaining and operating existing irrigation works * * *" § 45–1751, subsec. A. The evidence adduced with respect to the assessments involved in the present case indicates that they were made to defray current expense of the district pursuant to Art. 8, but the question of which type of assessment is involved for each year would appear to be academic here, since the lien created by both types of assessments is the same with respect to state-owned land. See A.R.S. § 45–1759.

ure of the district to file certain maps and lists of the lands assessed and the amount of assessments with the State Land Department,[3] he concedes the validity of the assessments as against the interests of the previous incumbent lessees. There is likewise no contention made by appellant that any of the assessments in question or the liens created by them have become stale and invalid by the mere passage of time.[4] While appellant's brief contains a number of contentions and sub-contentions, we deem it necessary only to consider the contention that appellant, as a purchaser of the land from the State, acquired an interest in land which was by provision of statute not chargeable with the liens of the assessments in question.

Our problem is essentially one of statutory interpretation, and a number of sections have pertinence. Under Art. 6, of Ch. 6, Tit. 45, entitled "STATE AND FEDERAL LANDS WITHIN [AN IRRIGATION] DISTRICT," § 45–1671 provides that all state lands within an irrigation district susceptible of service by it are subject to the laws of the state concerning irrigation districts in the same manner that privately owned lands are so subject. The next section, § 45–1672, is of critical importance in this case, and reads as follows:

"45–1672. Irrigation assessments as lien upon state lands within district; enforcement

"Officially certified lists of all state lands included within the boundaries of an irrigation district and susceptible of irrigation from the works thereof, with the amounts of assessments and charges of every character made against such lands, shall be furnished to the state land department as soon as the assess-

ments or charges are levied. All charges legally assessed for irrigation district purposes shall be a lien upon such lands and may be enforced in the following manner:

"1. When such state lands are held under certificate of purchase, the holder of the certificate or his assignee shall at the time of paying the annual installments of principal and interest as provided in the certificate, present to the state land department or other receiving officer a certificate from the county treasurer of the county in which the land is located showing that no unpaid district charges are due and delinquent against the land. If the holder of a certificate of purchase or his assignee fails, neglects or refuses for a period of one year after it becomes delinquent to pay any assessment or charge legally levied against the land, the failure, neglect or refusal shall constitute a breach of a condition of the certificate of purchase which shall subject the certificate to forfeiture. The state or any citizen thereof who pays the delinquent assessment or charge after the expiration of the one year period, may institute an action upon the certificate in the superior court in the county in which the land is located to forfeit the interest of the holder thereof or his assignee for the breach of the condition.

"(a) If the action is instituted by a citizen of the state and judgment rendered in the action against the defendant, the judgment creditor or his assignee shall be subrogated to all the rights of the defendant under the certificate of purchase, and a certificate of purchase shall be issued to the judgment creditor or his assignee for the consideration remain-

---

3. *See* A.R.S. §§ 45–1672 and 45–1673 requiring the filing of such maps and lists.

4. But as to whether a valid lien could be foreclosed by sale, *see* A.R.S. § 42–386, subsec. B, providing that no sale of land for delinquent taxes shall be commenced later than five years after delinquency

unless advertised within that period, and State of Arizona v. Miami Trust Co., 61 Ariz. 499, 152 P.2d 131 (1944), overruling Linville v. Cheney, 60 Ariz. 325, 137 P.2d 395 (1943). The applicability of the cited statute is at least arguable in view of the terms of A.R.S. § 45–1719, subsec. B.

ing unpaid on account of such state land. Such certificate shall provide that the consideration shall be paid within the time and upon the terms and conditions provided in the original certificate of purchase for the payment of the balance of the purchase price.

"(b) If the action is instituted by the state and judgment rendered in favor of the state against the defendant, any citizen of the state may have a certificate of purchase issued to him as provided by subdivision (a) of this paragraph upon presenting to the state land department a certificate or certificates showing that there are no unpaid delinquent charges or assessments against the land, and upon reimbursing the state for all costs incurred in prosecution of the action and upon paying to the state all delinquent installments of interest or principal on account of the original certificate of purchase.

"2. When such state lands are held under lease, the lessee thereof shall at the time of paying the rental installments provided in the lease present a certificate from the county treasurer of the county in which the land is located showing that no unpaid district charges or assessments are due and unpaid against the land. If a lessee of such state land or his assignee fails, neglects or refuses for a period of one year after receipt of notice of any such delinquency to present to the state land department a certificate showing such delinquent assessments or charges paid, the state land department shall declare the lease forfeited to the state and may thereafter lease or sell the land in the manner provided by this article.

"3. All charges and assessments legally levied against such state lands *not held under certificate of purchase or lease* by the irrigation district [5] shall be a continuing lien upon the lands, and such lands shall not be leased or sold until *the purchaser* or *lessee* thereof presents to the state land department a certificate from the county treasurer of the county in which the land is located showing that no unpaid district charges are due and delinquent against the land." (Emphasis added)

Section 45–1676, also of critical importance, provides:

"*Nothing in this chapter shall be construed as creating a lien against the interest of the state in any state lands,* nor an obligation against the state to pay charges, assessments or debts incurred by irrigation districts against state lands located within the district." (Emphasis added)

These other statutes found in subsequent articles of Tit. 45, Ch. 6, are either pertinent or arguably pertinent:

" § 45–1714.  Determination of tax rate

"A.  *  *  *  When so levied the district taxes shall become a lien upon the real estate taxed which shall be in force and effect until the taxes and all penalties and interest thereon are paid.

*  *  *"

"§ 45–1716.  Manner of assessment and levy

"All district taxes upon each acre of land in a district subject to taxation for

---

5.  There is no contention by any party that the phrase " *  *  *  by the irrigation district  *  *  *" in § 45–1672, subsec. 3 qualifies the immediately preceding phrase " *  *  *  lands not held under certificate of purchase or lease  *  *  *" instead of the phrase "All charges and assessments legally levied against such state lands  *  *  *"  An argument might be made that to construe " *  *  *  by the irrigation district  *  *  *" to quali-fy the opening language of the subsection instead of the immediately preceding language is the more awkward construction. In our view, however, " *  *  *  by the irrigation district  *  *  *" does qualify the opening language of the subsection, notwithstanding its separation from it, since the other interpretation would upset what appears to be the logical subdivisional nature of the subsection.

district purposes shall be assessed and taxes levied thereon at a uniform rate per acre * * *"

"§ 45–1719. Applicability of state tax laws; exemption of state lands

"A. All taxes levied and assessed under this chapter shall become due and delinquent and shall become a lien on the real property assessed at the same time as state and county taxes.

"B. All provisions of the general revenue laws for the assessment, levying and collection of taxes on real estate for state and county purposes shall be applicable to the assessment, levy and collection of taxes for the purpose of this chapter so far as applicable, including all remedies of such revenue laws for collecting delinquent taxes and provisions relating to sales of real property for delinquent taxes.

"C. *Title of the state to any lands in the district shall not be subject to the lien of any district tax levied against the interest of lessees or purchasers of such state lands, and no district tax shall be levied upon state lands except to the extent of interest of lessees or purchasers thereof in such lands.*" (Emphasis added)

"§ 45–1759. District tax and assessment as first lien

"The district tax and assessment liability of district lands shall at all times be a first charge against such lands, and all district taxes and assessments levied and assessed shall continue to be first liens against district lands *except as otherwise expressly provided with respect to lands owned by the state* or the United States." (Emphasis added)

In our view, the key to the controversy before us lies in § 45–1672. The appellees agree, since they regard subsection 3 of § 45–1672 as determinative of the controversy against appellant. Appellees contend that the terms of § 45–1672, subsec. 3 clearly required appellant to obtain a certificate from the county treasurer that no unpaid district charges were outstanding against the land and present it to the land department prior to purchase, at which time the unpaid assessments would have been ascertained, and that the district has a " * * * continuing lien * * *" on the property until the charges have been paid.

But in this contention, both of the appellees have failed to take into account the language in § 45–1672, subsec. 3 limiting the applicability of the subsection to state lands " * * * *not held under* certificate of purchase or *lease* * * *"" (Emphasis added.) It seems to us that the overlooked language destroys the contention. Subsection 1 concerns enforcement of a lien when the land is held by a vendee under a certificate of purchase, and subsection 2 deals with enforcement of a lien when the lands are held under lease from the State. Giving ordinary effect to the language " * * * not held under certificate of purchase or lease * * *" in subsection 3, the subsection deals with the only remaining situation not dealt with in the two previous subsections, *i. e.*, where the land is neither being sold nor leased by the State.

While all three subsections of § 45–1672 are prefaced with the provision that "All charges legally assessed for irrigation district purposes shall be a lien upon such [state-owned] lands * * *," a specified mode of enforcement is set forth where the land is the subject of purchase or lease, and only in subsection 3 is it stated that the lien of the irrigation district for its assessments shall be a " * * * continuing lien * * *" to be removed by a purchaser or lessee of the land prior to consummation of any such subsequent transaction.

■ The "lien" referred to in § 45–1672 and in the similarly couched terms of §§ 45–1714, 45–1719, subsec. A, and 45–1759, quoted above, must be read in the context of §§ 45–1676 and 45–1719, subsec. C, which deny any effectuality to such a lien as against the title and interest of the

State in these lands. These latter sections are explicit in delimiting the effect of liens against state-owned lands, and in our view they are controlling over the more general terms of the lien-creating provisions.

 Liens are a creature of statute, *see* State v. Martin, 59 Ariz. 438, 444–445, 130 P.2d 48, 51 (1942), and the legislature may provide for the creation of liens in any manner it may deem fit. Here, it is clear from the terms of §§ 45–1676 and 45–1719, subsec. C that the legislature has sought to create liens which are enforceable only to the extent of the interests of purchasers and lessees of the land. True, a " * * * continuing lien * * *" exists against the land while in state ownership where there is no purchaser or lessee, under § 45–1672, subsec. 3, and it may be that, in order to reconcile that subsection with §§ 45–1676 and 45–1719, subsec. C, the "lien" referred to must be considered a dormant or inchoate one which springs into enforceable existence at the time of sale or lease of the land. But the land in question in this case was concededly under lease at the time of the assessments in question here, and there is no occasion for us to consider the effect of a purchaser's or lessee's failure to comply with § 45–1672, subsec. 3 where assessments had been levied against state land which was not being purchased or leased at the time of assessment.[6]

To the extent that the lien-creating provisions of Ch. 6, of Tit. 45, concerning state-owned land may be in conflict with the two statutes upon which we have placed emphasis, §§ 45–1676 and 45–1719, subsec. C, so that collectively they are rendered ambiguous on the question before us, it is our duty to resolve doubts as to their meaning against the taxing authority and in favor of the taxpayer. City of Phoenix v. Borden Co., 84 Ariz.

250, 252–253, 326 P.2d 841, 843 (1958). Here, §§ 45–1676 and 45–1719, subsec. C explicitly provide that the title and interest of the State is not to be subject to the liens in question. The appellant has purchased the title of the State, or he has purchased nothing. The liens could not have been enforced against the title and interest of the State, and we hold that they could not have been enforced against appellant. There is, accordingly, no basis for sustaining the collectibility of these assessments, which appellant paid under protest.

Reversed and remanded with instructions to enter judgment in favor of appellant and against the appellee Maricopa County, and for such further proceedings as may be proper with regard to the third-party complaint and counterclaim.

HATHAWAY and KRUCKER, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.

---

6. *See also* § 37–255, providing that "The interest of the holder of any * * * lease * * * on state land, shall be subject to sale * * * or other lien to the same extent as patented land, without prejudice to the state." This statute is consistent with the theory that a lien attaches only against the interest of a lessee from the state, where the land assessed is leased.