72 P.3d 1271

**INTERLOTT TECHNOLOGIES, INC., a Delaware corporation, Plaintiff–Appellant,**

v.

**ARIZONA DEPARTMENT OF REVENUE, an Agency of the State of Arizona, Defendant–Appellee.**

No. 1 CA–TX 02–0020.

Court of Appeals of Arizona, Division 1, Department T.

July 22, 2003.

Janet Napolitano, Former Attorney General, Terry Goddard, Attorney General By Michael P. Worley, Assistant Attorney General, Phoenix, Attorneys for Defendant–Appellee.

## OPINION

EHRLICH, Judge.

¶ 1 This is an appeal from a summary judgment holding Interlott Technologies liable for assessments of the transaction privilege tax, a tax akin to a business privilege tax based upon gross receipts from taxable activity. ARIZ.REV.STAT. ("A.R.S.") § 42–5008 (Supp.2002); *see Southern Pac. Transp. Co., Inc. v. Ariz. Dep't of Revenue,* 202 Ariz. 326, 333 ¶ 25, 44 P.3d 1006, 1013 (App.2002). Finding no error, we affirm the judgment.

### *FACTS AND PROCEDURAL BACKGROUND*

¶ 2 Interlott leases and sells instant-winner lottery-ticket vending machines ("ITVMs"). The Arizona Lottery awarded the company a contract in 1993, and leased 200 Interlott ITVMs between January 1994 and December 1998. The parties renewed the ITVM lease ("Lease Agreement") for twelve-month periods through 1997 and for two six-month periods in 1998.

¶ 3 Interlott installed the ITVMs at retail locations throughout Arizona, and, during the relevant time, had at least two employees living and working in the state. Those employees delivered and installed the ITVMs, performed preventive maintenance on the machines, responded to service calls, trained store personnel in ITVM operation, and removed and relocated the machines. Eighty-nine percent of the ITVMs remained in the same location during the entire lease term.[1]

¶ 4 After the Arizona Department of Revenue ("ADOR") conducted a state privilege tax audit of Interlott, it determined that Interlott had not paid this tax on the gross revenues from leasing ITVMs to the Lottery. Accordingly, the agency issued a privilege tax assessment of $192,388.21, consisting of

Lieberman, Dodge, Gerding, Kothe & Anderson, Ltd. By David D. Dodge and Marc R. Lieberman, Phoenix, Attorneys for Plaintiff–Appellant.

---

1. The ITVMs were designed to be anchored to the floor or counter. The agreement required that they also be of "sufficient weight to prevent theft of the machine."

the tax, penalties and interest through March 31, 1999.

¶5 At the same time, ADOR performed privilege tax audits on behalf of fifteen Arizona cities and towns ("Cities").[2] These audits showed that Interlott had received $370,230 from leasing ITVMs to the Cities but that it had not paid any privilege taxes to them. Thus, ADOR, on behalf of the Cities, issued fifteen proposed assessments consisting of privilege taxes, interest and penalties totaling $8619.76.

¶6 ADOR mailed the notices of proposed assessments for the State and the Cities to Interlott in one envelope. The company received the notices on March 22, 1999, and responded with a Notice of Protest contesting the amount of $192,388.21. It filed no other notices challenging additional amounts or asserting alternative grounds for relief within the time allowed by law, i.e., forty-five days following its receipt of the proposed assessments. Model City Tax Code ("Code"), A.R.S. § 42–6051 *et seq.,* § 570(b)(1)(A). It did, though, on May 19, 1999, write ADOR that the "appeal of the Transaction Privilege Tax Audit findings ... constitutes an appeal of the entire audit assessment. It is our intent that any assessments, imposed by an[y] taxing jurisdiction, are to be included."

¶7 At the administrative hearing, Interlott maintained that it had no business presence in Arizona apart from the Lease Agreement. In addition, it argued that the audit should be vacated because the contract and bid documents had no mention of transaction privilege taxes and because there would be no tax if the Arizona Lottery had purchased the ITVMs instead of leasing them. The administrative law judge reviewed and affirmed the State's and Cities' assessments, and the ADOR director upheld that ruling.

¶8 Interlott appealed to the tax court. ADOR successfully moved for summary judgment on the issues of nexus and the applicability of the tax. The agency also successfully urged the court that Interlott

had failed to timely protest the municipal assessments, and this appeal followed.

## DISCUSSION

### A. Tax Court Jurisdiction of Claimed Protest of Cities' Assessments

¶9 We view the facts in the light most favorable to the party against which summary judgment was granted, *Valencia Energy Co. v. Ariz. Dep't of Revenue,* 191 Ariz. 565, 568 ¶2, 959 P.2d 1256, 1259 (1998), but we review *de novo* the tax court's ruling. *Wilderness World, Inc. v. Ariz. Dep't of Revenue,* 182 Ariz. 196, 198, 895 P.2d 108, 110 (1995). This standard applies as well to determinations of jurisdiction and the timeliness of a complaint for judicial review. *Guminski v. Ariz. State Veterinary Med. Examining Bd.,* 201 Ariz. 180, 182 ¶¶9–10, 33 P.3d 514, 516 (App.2001).

¶10 The threshold issue is whether the tax court had jurisdiction of the claimed protest against the Cities' assessments. Interlott contends that its protest incorporated the Cities' assessments, that the protest was timely, that the protest was amended via correspondence and that, even if it did not make a timely protest, ADOR is estopped to assert a lack of jurisdiction because the agency failed to challenge jurisdiction during the administrative proceedings. We reject these arguments.

¶11 A party must contest the applicability or amount of a tax within forty-five days of the receipt of the assessment. Code § 570(b)(1)(A). The petition must "be in writing and shall set forth the reasons why any correction, abatement, or refund should be granted, and the amount of reduction or refund requested." *Id.* at § 570(b)(3)(A). "The provisions of this Section are exclusive, and no petition seeking any correction, abatement, or refund shall be considered unless the petition is timely and properly filed under the Section." *Id.* at § 570(b)(3)(C).

---

2. These towns and cities are Apache Junction, Bullhead City, Casa Grande, Chino Valley, Fountain Hills, Gilbert, Goodyear, Kingman, Lake Havasu City, Oro Valley, Payson, Sedona, Sierra Vista, Surprise and Yuma. ADOR collects privilege taxes for these towns and cities pursuant to intergovernmental agreements and A.R.S. § 42–6001(B) (Supp.2002).

¶ 12 Approximately forty days after having received the sixteen assessments, Interlott filed a Notice of Protest. It contested the amount of $192,388.21, exactly the amount of the State assessment, and its arguments included:

1. Interlott had no place of business in Arizona, meaning that only a use tax could be imposed;

2. the Lease Agreement was a financing mechanism; if the State had bought the ITVMs, there would be no tax;

3. the State's assessment was a breach of the Lease Agreement, which set forth all applicable provisions and costs;

4. it was inappropriate for the State to attempt to impose penalties and interest in addition to a retroactive tax; and

5. Interlott did not understand that the lease was subject to the Arizona privilege tax and asked that "the entire audit assessment be vacated."

¶ 13 Fifty-nine days after having received the notices of the Cities' proposed assessments, on May 19, 1999, Interlott had a telephone conversation with an ADOR employee, followed by a letter of confirmation. It was in that letter that Interlott stated that it protested "any assessments, imposed by an[y] taxing jurisdiction."

¶ 14 We conclude that Interlott timely protested the State assessment, but not the Cities' assessments. Not only was the stated amount that of the State assessment alone, but its Notice of Protest did not cite any municipal activities or assessments, or even mention the Cities. Rather, while Interlott challenged the "entire audit assessment," its protest was simply as follows:

In view of the above, it is particularly inappropriate for the State of Arizona to attempt to impose penalties and interest on top of the attempt to retroactively impose a transaction privilege tax.

For the above reasons, we believe that the lease agreement between the State of Arizona and Interlott Technologies does not involve the kind of commercial transaction, which incurs a liability for a transaction privilege tax in Arizona. We therefore request that the entire audit assessment be vacated.

In its historical context, the reference in the letter to the "entire audit assessment" pertains to the imposition of penalties and interest as well as "a transaction privilege tax." It does not relate to the assessments on behalf of the fifteen Cities.

¶ 15 Nor did Interlott file or seek to file a written amendment or make or try to make an oral amendment to its Notice of Protest as the Code at § 570(b)(3)(A) permits. Although an amendment may be made "at any time prior to the time the taxpayer rests his case" if a hearing is held, *id.*, a telephone call with and letter to the opposing party is insufficient to constitute a formal amendment. Thus, Interlott failed to protest the Cities' assessments.

¶ 16 Interlott maintains that ADOR waived this contention. However, a jurisdictional argument cannot be waived, and a failure to protest municipal assessments and the resulting finality of the assessments creates a jurisdictional issue. A.R.S. § 42–1251(B) (1999)(failure to meet ADOR appeal deadline requires payment of all taxes, penalties and interest); *see McNutt v. Ariz. Dep't of Revenue*, 196 Ariz. 255, 265 ¶ 35, 995 P.2d 691, 701 (App.1998)("A party's failure to resort to and exhaust administrative remedies deprives the [tax] court of jurisdiction to hear the party's claim."); *Estate of Bohn v. Waddell*, 174 Ariz. 239, 245–46, 848 P.2d 324, 330–31 (App.1992)("[I]f parties have statutory recourse to an administrative agency that has authority to grant appropriate remedies, they must scrupulously follow the statutory procedures."), *cert. denied*, 509 U.S. 906, 113 S.Ct. 3000, 125 L.Ed.2d 693 (1993). ADOR's challenge is not barred.

¶ 17 Equally unavailing is Interlott's alternative contention that ADOR somehow is estopped to raise jurisdiction because a party cannot create jurisdiction by means of estoppel. *See Swichtenberg v. Brimer*, 171 Ariz. 77, 82, 828 P.2d 1218, 1223 (App.1991) (jurisdiction over claim cannot be conferred by court or be based upon estoppel of party to deny it exists); *see also Guminski*, 201 Ariz. at 184 ¶ 18, 33 P.3d at 518 (well-settled

rule that subject-matter jurisdiction cannot be conferred by estoppel). Moreover, estoppel requires evidence of a party's reliance to its detriment, i.e., "a positional change not compelled by law," *Valencia*, 191 Ariz. at 577 ¶ 38, 959 P.2d at 1268, and Interlott never explains how ADOR's failure to raise the issue of timeliness earlier caused it such difficulty. Therefore, estoppel does not preclude ADOR from raising the argument, and we need not reach Interlott's further argument regarding the Cities.

### B. Interlott's Claimed Regulatory Exemption from Transaction Privilege Tax

¶ 18 Interlott contends that it is exempted from the Arizona transaction privilege tax by the Arizona Administrative Code ("A.A.C."). Specifically, the company argues that, based on A.A.C. R15–5–2306 and R15–5–2307, this tax is limited to taxpayers maintaining a business in Arizona.

¶ 19 According to R15–5–2306(B), the sales and use taxes are complementary; only one can apply to a given transaction. Because "[s]ales made by vendors maintaining a place of business within Arizona are subject to the Sales Tax," Interlott reasons that its failure to maintain such a business means that it can only be subject to a use tax. *See* A.A.C. R15–5–2307.

¶ 20 This contention was rejected in *Arizona Department of Revenue v. Care Computer Systems, Inc.*, 197 Ariz. 414, 418–19 ¶¶ 18–19, 4 P.3d 469, 473–74 (App.2000). "That the regulation in question specifies that vendors maintaining a place of business in Arizona are subject to the sales tax does not necessarily mean that other vendors are not subject to the sales tax." *Id.* at 419 ¶ 19, 4 P.3d at 474. Moreover, "while A.A.C. R15–5–2307 certainly says that a taxpayer who maintains a place of business in Arizona will be subject to the transaction privilege tax, it does not purport to exclude a taxpayer who does not maintain a place of business from the tax." *Id.* at ¶ 21, 4 P.3d 469.

¶ 21 Alternatively, Interlott contends that, because A.A.C. R15–5–2308 provides that "[p]urchases made from vendors not

maintaining a place of business in this state to Arizona customers are subject to the Use Tax," it thereby excludes application of the transaction privilege tax. However, Interlott is not a mail-order seller. It was in Arizona to lease to an Arizona party hundreds of items of property that were kept and serviced in Arizona for that purpose. The regulations provide no safe harbor for Interlott.

### C. Sufficiency of Nexus Between Interlott and State to Subject Interlott to the Transaction Privilege Tax

¶ 22 Two recent cases also undermine Interlott's use tax argument and suggest a nexus for the state transaction privilege tax. In *Arizona Department of Revenue v. O'Connor, Cavanagh, Anderson, Killingsworth & Beshears, P.A.*, 192 Ariz. 200, 963 P.2d 279 (App.1997), an out-of-state vendor was held to be subject to the tax although it had no property, business location or employees in Arizona because it had one customer in the state and because its activities in performing the contract with that customer over the years were significantly associated with its ability to establish and maintain an Arizona market.

¶ 23 Applying *O'Connor*, a nexus was found in *Care Computer Systems* in which case the out-of-state vendor had no property, place of business or employees in Arizona, 197 Ariz. at 416 ¶ 9, 4 P.3d at 471, but its activities were significantly associated with its ability to establish and maintain an Arizona market. *Id.* at 417 ¶ 15, 4 P.3d at 472. A sufficient nexus existed because the company made more than 180 sales in Arizona (mostly by mail order), dispatched training personnel to Arizona regularly and sent California—based sales personnel to visit Arizona seven times in seven years. *Id.* at 416–17 ¶¶ 10–13, 4 P.3d at 471–72.

¶ 24 Likewise, the United States Supreme Court has long recognized that a sale of tangible goods creates a sufficient nexus with the state in which it is consummated to support a state tax. *Okla. Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 184, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995).[3] A state

**3.** As discussed in *Tri State Coach Lines, Inc. v.*

nexus exists if a telephone call originates or terminates in the state and the cost is billed to a service address within the state. *Goldberg v. Sweet,* 488 U.S. 252, 263, 109 S.Ct. 582, 102 L.Ed.2d 607 (1989).

¶ 25 Arizona's tax falls squarely within these authorities. Interlott had two hundred machines in Arizona and maintained two employees in the State to respond to service calls, perform preventive maintenance on the machines, train others to use and maintain the machines, and remove and move the machines.

¶ 26 Interlott contends nonetheless that four factual issues preclude summary judgment:

1. No ITVM sales occurred in Arizona;

2. no market was maintained because the contract established that market;

3. no business resulted from contacts by Interlott's employees in Arizona; and

4. all of Interlott's business transactions with the Arizona Lottery were regulated by a series of short-term leases.

These assertions do not create genuine disputes of material fact.

¶ 27 The existence of a "sale" is not essential to the creation of a nexus. A lease is included for purposes of the privilege tax. A.R.S. § 42–5001(13)(Supp.2002)(lease included in definition of "sale"). In fact, the taxpayer in *Care Computer Systems* also leased the property. 197 Ariz. at 416 ¶ 10, 4 P.3d at 471.

¶ 28 Nor can we accept the proposition that Interlott maintained no market in Arizona. Performing a contract is maintaining a market. *O'Connor,* 192 Ariz. at 206, 963 P.2d at 285.

¶ 29 Indeed, an activity need not produce business in order to create a nexus. In *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), for example, the United States Supreme Court held that a state sales or privilege tax imposed on an activity in interstate commerce can withstand a Commerce Clause challenge if the activity has a substantial

nexus with the state. In that case, the taxpayer's activity was transporting new vehicles between points in the same state after having received a General Motors shipment from out of state. *Id.* at 276, 97 S.Ct. 1076. Here, Interlott's activity was conducting the leasing business itself within the state, where the employees, customer, property and place of performance were located.

¶ 30 Finally, the succession of short-term lease periods does not deprive the transactions of a nexus. Unlike a mail order that terminates upon delivery as in *Quill Corporation v. North Dakota By and Through Heitkamp,* 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), the Lease Agreement was only the beginning of the delivery of ITVMs in Arizona; performance continued. Whereas the taxpayer in *Quill* had no sales force and insignificant tangible property in the taxing state, *id.* at 302, 112 S.Ct. 1904 Interlott brought the property to Arizona and kept it and two employees in the state to continue the business. Interlott is subject to the transaction privilege tax.

## D. Interlott's Failure to Demonstrate Reasonable Cause for Not Filing Privilege Tax Returns and Paying the Tax

¶ 31 Interlott asserts estoppel to prevent the collection of penalties. It contends that it reasonably relied on state regulations, but we disagree.

¶ 32 According to A.R.S. § 42–1125(A) and (D)(Supp.2002), a taxpayer late in paying taxes and filing tax returns must pay penalties "unless it is shown that the failure is due to reasonable cause and not due to wilful neglect." In *People of Faith, Inc. v. Arizona Department of Revenue,* 171 Ariz. 140, 829 P.2d 330 (App.1992), this statute (former A.R.S. § 42–136) was applied to a taxpayer claiming an exemption available only to licensed nursing care facilities. While its lifecare provider permit from the Department of Insurance did not qualify as a license, the taxpayer nevertheless—and unsuccessfully—claimed that it had provided reasonable

---

Ill.App.3d 179, 247 Ill.Dec. 805, 732 N.E.2d 1137 (2000), for reasons other than this proposition, the *Jefferson Lines* opinion was "reversed" by the

passage of the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 14505 (Supp. II 1997).

cause for having failed to pay the tax on purchases for its facility. *Id.* at 149–50, 153–54, 829 P.2d at 339–40, 343–44.

¶ 33 Interlott claims an exemption because it routinely reviews the privilege tax law in each state in which it does business. It never affirms, however, that it actually reviewed Arizona law, specifically the regulations forming the basis for its estoppel argument. "Reasonable cause" is lacking.

 ¶ 34 We are likewise unpersuaded by Interlott's argument that assessment somehow is barred by the absence of language in contract forms indicating that a tax would be due. It posits that a taxpayer misled by a state agency should not be liable for penalties, yet it fails to specify what the Arizona Lottery did to mislead it.

¶ 35 Equally inapplicable are the arguments that punishment is unwarranted when a taxpayer chooses the wrong tax to pay and follows the State's instructions. Interlott paid no taxes and provides no evidence of following instructions from ADOR.

 ¶ 36 Alternatively, Interlott argues that penalties are inappropriate in light of the inability to collect a sales tax from the State. This argument is unfounded. Receipts from transactions with the State are neither exempt nor nontaxable. *City of Tempe v. Del E. Webb Corp.*, 13 Ariz.App. 597, 599, 480 P.2d 18, 20 (1971) (holding that city may impose transaction privilege tax on independent contractor although underlying construction contracts with state agency), *as modified*, 14 Ariz.App. 228, 482 P.2d 477 (1971). To the contrary, government entities are subject to transaction privilege taxes unless they are exercising purely governmental functions. *E.g., Town of Somerton v. Moore*, 58 Ariz. 279, 280, 119 P.2d 239, 239 (1941)(holding that income from water sales taxable). The Arizona Lottery's refusal to pay Interlott was based upon the Lease Agreement's limitation of rent to $205 per machine per month. The seller is not the agent of the State to collect a tax, and no

statutory provision requires it to collect an amount as a tax. *Ariz. State Tax Comm'n v. Garrett Corp.*, 79 Ariz. 389, 392–93, 291 P.2d 208, 210–11 (1955).

### CONCLUSION

¶ 37 The judgment is affirmed.

CONCURRING: ANN A. SCOTT TIMMER, Judge and A. FRED NEWTON, Judge Pro Tempore.[4]