IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

BLK III, LLC, *Plaintiff/Appellant*,

*v.*

LUKE J. SKELTON, et al., *Defendants/Appellees*.

No. 1 CA-CV 20-0654
FILED 2-17-2022

---

Appeal from the Superior Court in Maricopa County
No. CV 2019-56300
The Honorable Andrew J. Russell, Judge

**AFFIRMED**

---

COUNSEL

Horne Slaton PLLC, Scottsdale
By Thomas C. Horne
*Counsel for Plaintiff/Appellant*

Jones, Skelton & Hochuli, PLC, Phoenix
By F. Richard Cannata, Jr.; Diana J. Elston; Eileen Dennis Gilbride
*Counsel for Defendants/Appellees Lew*

Schneider & Onofry PC, Phoenix
By Dee R. Giles
*Counsel for Defendants/Appellees Skelton*

Childers Hanlon & Hudson PLC, Phoenix
By Gary L. Hudson, Jr. (Hallin)
    Christopher M. Hanlon, Christopher J. Bork (Sigona)
*Counsel for Defendants/Appellees Hallin & Sigona*

Burch & Cracchiolo PA, Phoenix
By Gregory A. Rosenthal
*Counsel for Defendant/Appellee Giammarco*

Matheson & Matheson PLC, Scottsdale
By David P. Matheson
*Counsel for Defendants/Appellees Haas*

Sanders & Parks PC, Phoenix
By Ryan P. Sandstrom, Mark G. Worischeck
*Counsel for Defendants/Appellees Satterfield*

Jardine Baker Hickman & Houston PLLC, Phoenix
By Bradley R. Jardine
*Counsel for Defendants/Appellees McInerney*

## OPINION

Presiding Judge Jennifer B. Campbell delivered the opinion of the Court, in which Judge Samuel A. Thumma and Judge Maurice Portley[1] joined.

C A M P B E L L, Judge:

¶1          Plaintiff BLK III, LLC (BLK) appeals from the judgment of the superior court following the dismissal of its complaint against Luke Skelton and other defendants (collectively, the Defendants). Because the court correctly applied Arizona's strategic lawsuits against public participation (anti-SLAPP) statute, A.R.S. § 12-752, which provides a special, expedited mechanism for addressing whether a complaint predicated on public participation in governmental proceedings may proceed, we affirm.

## BACKGROUND

¶2          In 2016, BLK began operating a dining and entertainment business (BLK Live) that regularly featured live music. When BLK leased the commercial space for BLK Live, it took the property subject to an existing conditional use permit the City of Scottsdale had issued to a previous tenant. Beyond the City's general noise ordinance, the use permit also prohibited noise that exceeded the "ambient noise levels consistent to the use and character of the area."

¶3          In 2019, BLK sued the Defendants, each of whom lives near the BLK Live venue. BLK alleged the Defendants "conspired to intentionally destroy" BLK Live by: (1) orchestrating a "scheme to report false sound violations" to the Scottsdale Police Department and (2) soliciting help from members of the Scottsdale City Council in their effort to have BLK Live's use permit revoked. According to BLK, the police never substantiated any of the Defendants' noise complaints, and many of the complaints were made "when no live entertainment was occurring." Denying that it ever violated the City's noise ordinance, BLK asserted that

---

[1]     The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

it "was forced to" shut down BLK Live because the council "intended to revoke" the use permit based on the Defendants' false complaints.

¶4         The Defendants moved to dismiss the complaint pursuant to A.R.S. § 12-752, arguing BLK filed the complaint in retaliation for the exercise of their constitutional right to petition the government for redress. After briefing, the superior court dismissed the complaint with prejudice and entered a final judgment awarding the Defendants' their attorneys' fees and costs. BLK timely appealed.

## DISCUSSION

¶5         BLK challenges the superior court's dismissal of its complaint. Characterizing the Defendants' reports of noise violations as "false" and "fabricated," BLK argues the Defendants were not entitled to relief under A.R.S. § 12-752 because the statute's special dismissal procedure safeguards only certain, constitutionally-protected speech.

¶6         We generally review the dismissal of a complaint de novo. *Coleman v. City of Mesa*, 230 Ariz. 352, 355-56, ¶¶ 7-8 (2012). But as the Defendants point out, a motion to dismiss under A.R.S. § 12-752 is not limited by the evidentiary constraints imposed on motions to dismiss for failure to state a claim. *See* Ariz. R. Civ. P. 12(d). In fact, rather than limiting the scope of review only to the pleadings, A.R.S. § 12-752(B) expressly instructs a superior court to consider affidavits as part of its dismissal analysis. Contrary to the Defendants' contention, however, we need not apply a deferential standard when reviewing a dismissal under A.R.S. § 12-752. In analogous circumstances, when matters outside a motion to dismiss are presented to and considered by the superior court, as occurred in this case, we review the court's ruling under a de novo standard, and likewise do so here. *See Frey v. Stoneman*, 150 Ariz. 106, 109 (1986) ("Because evidence extrinsic to the pleadings was offered to and relied on by the trial judge in making this decision, the motion to dismiss should have been treated as one for summary judgment."); *State Comp. Fund v. Yellow Cab Co. of Phoenix*, 197 Ariz. 120, 122, ¶ 5 (App. 1999) (reviewing de novo a ruling on a motion for summary judgment).

¶7         "When interpreting a statute, our primary goal is to give effect to the legislature's intent." *Wilks v. Manobianco*, 237 Ariz. 443, 446, ¶ 8 (2015) (citation and quotation omitted). To derive that intent, we consider the "statutory language in view of the entire text, considering the context and related statutes on the same subject." *Nicaise v. Sundaram*, 245 Ariz. 566, 568, ¶ 11 (2019). "If the language is clear and unambiguous," we follow the text

as written and "need not resort to other methods of statutory construction." *Indus. Comm'n of Ariz. v. Old Republic Ins. Co.*, 223 Ariz. 75, 77, ¶ 7 (App. 2009). Only if a statute is ambiguous will we examine "the statute's history, context, consequences, and purpose." *Wilks*, 237 Ariz. at 446, ¶ 8. When statutes relate to the same subject or the same general purpose, they "should be read in connection with, or should be construed with other related statutes, as though they constituted one law." *Pinal Vista Prop., L.L.C. v. Turnbull*, 208 Ariz. 188, 190, ¶ 10 (App. 2004) (citation and quotation omitted). Further, "each word or phrase of a statute must be given meaning so that no part is rendered void, superfluous, contradictory or insignificant." *Id.*

¶8        In 2006, the legislature enacted A.R.S. § 12-752, which provides an expedited mechanism for challenging a complaint predicated on public participation in governmental proceedings. The statute states, in relevant part:

> A. In any legal action that involves a party's exercise of the right of petition, the defending party may file a motion to dismiss the action under this section. When possible, the court shall give calendar preference to an action that is brought under this subsection and shall conduct an expedited hearing after the motion is filed with the court and notice of the motion has been served as provided by court rule.
>
> B. The court shall grant the motion unless the party against whom the motion is made shows that the moving party's exercise of the right of petition did not contain any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual compensable injury to the responding party. In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating facts on which the liability or defense is based. At the request of the moving party, the court shall make findings whether the lawsuit was brought to deter or prevent the moving party from exercising constitutional rights and is thereby brought for an improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation. If the court finds that the lawsuit was brought to deter or prevent the exercise of constitutional rights or otherwise brought for an improper purpose, the moving

party is encouraged to pursue additional sanctions as provided by court rule.

**¶9** By its express language, A.R.S. § 12-752 applies only to legal actions that involve "a party's exercise of the right of petition." A related statute defines the "exercise of the right of petition" as any statement that "falls within the constitutional protection of free speech" and is: (a) "[m]ade before or submitted to a legislative or executive body or any other governmental proceeding"; (b) "[m]ade in connection with an issue that is under consideration or review"; and (c) "[m]ade for the purpose of influencing a governmental action, decision or result." A.R.S. § 12-751(1)(a)-(c).

**¶10** To survive the Defendants' motion to dismiss under this statutory framework, BLK needed to: (1) allege specific facts that, if true, proved either that the Defendants' statements to the police and council members did not fall within the ambit of constitutionally-protected speech or that the Defendants did not make the statements under the circumstances delineated in A.R.S. § 12-751(1); or (2) show that the Defendants' statements to the police and council members did not contain any reasonable factual support or any arguable basis in law and that the statements caused BLK actual compensable injury. A.R.S. § 12-752(B).

**¶11** We first consider whether the Defendants' noise complaints to both the police and council members constituted protected speech. BLK argues the Defendants' noise complaints were not constitutionally protected speech because they were defamatory. The First Amendment enshrines the right to free speech, protecting the "uninhibited discussion of public issues," but the right is not absolute—"[s]ociety has a pervasive and strong interest in preventing and redressing" defamatory speech. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 22 (1990) (citation and quotation omitted). Nonetheless, because "the expense of defending a meritless defamation case" can have "a chilling effect on First Amendment rights," *Read v. Phoenix Newspapers, Inc.*, 169 Ariz. 353, 357 (1991), "the superior court must act as [a] gatekeeper protecting the right to free speech" from encroachment. *Sign Here Petitions LLC v. Chavez*, 243 Ariz. 99, 102, ¶ 1 (App. 2017); *see also Yetman v. English*, 168 Ariz. 71, 79 (1991) ("Given the rigorous scrutiny required by the first amendment," the court must "carefully examine every alleged defamatory statement . . . to ensure that first amendment concerns are protected.").

**¶12** A defendant is liable for defaming a private person if he knowingly or recklessly publishes a false and disparaging communication

concerning that person to a third party. *Peagler v. Phoenix Newspapers, Inc.*, 114 Ariz. 309, 315 (1977). A statement is not defamatory unless it is capable of bearing a defamatory meaning." *Yetman*, 168 Ariz. at 79. As a matter of law, a statement is not actionable if it cannot reasonably be interpreted as stating or implying facts "susceptible of being proved true or false." *Milkovich*, 497 U.S. at 21. Put simply, the plaintiff must show that the statement is "provable as false before a defamation action can lie." *Turner v. Devlin*, 174 Ariz. 201, 205 (1993). Accordingly, "[t]he key inquiry is whether the challenged expression, however labeled by [the] defendant, would reasonably appear to state or imply assertions of objective fact." *Yetman*, 168 Ariz. at 76 (citation omitted).

¶13        In determining whether a statement is defamatory, the court must consider "the impression created by the words used as well as the general tenor of the expression, from the point of view of a reasonable person at the time the statement was uttered and under the circumstances it was made." *Sign Here Petitions*, 243 Ariz. at 105, ¶ 21 (internal quotation omitted). If a court determines that the publication is incapable of a defamatory meaning, the claim is subject to dismissal. *See Yetman*, 168 Ariz. at 79; *see also Reynolds v. Reynolds*, 231 Ariz. 313, 317-18, ¶¶ 9, 12 (App. 2013).

¶14        With these principles in mind, we consider the allegations in BLK's complaint, along with the declarations BLK submitted in response to the Defendants' motion to dismiss. According to BLK, the Defendants made "hundreds of false sound complaints" that disparaged BLK Live and portrayed BLK "as an unlawful business operator." But apart from describing the complaints as false and disparaging, BLK failed to identify *any* actual statement uttered by *any* of the Defendants.

¶15        Under Arizona Rule of Civil Procedure (Rule) 8(a), a pleading must give the opposing party "fair notice of the nature and basis of the claim" by setting forth a short and plain statement that demonstrates entitlement to relief. *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 6 (2008) (internal quotation omitted). While a court considering a motion to dismiss must accept as true all well-pled factual allegations and reasonable inferences, it may not speculate about hypothetical facts. *Id.* at 419-20, ¶¶ 7, 14. To be sure, "conclusory statements are insufficient to state a claim upon which relief can be granted," and "legal conclusions, without any supporting factual allegations," fail to satisfy Arizona's notice pleading standard. *Id.* at 419, ¶ 7. This is especially true in a defamation action because the context and language of an allegedly defamatory statement is crucial to the court's analysis. *See Phoenix Newspapers, Inc. v. Church*, 103 Ariz. 582, 587 (1968). That is, without knowing the precise language of the

statement allegedly uttered, the court cannot analyze whether the statement is objectively verifiable as true or false—a critical question in determining whether a defamation action may lie. *Milkovich*, 497 U.S. at 21; *Turner*, 174 Ariz. at 205; *Dube v. Likins*, 216 Ariz. 406, 419, ¶ 46 (App. 2007); *Yetman*, 168 Ariz. at 81 (explaining a statement is not actionable if it does not present "the kind of empirical question a fact-finder can resolve").

**¶16**    Applying these principles in the context of A.R.S. § 12-752, a plaintiff cannot survive a motion to dismiss by baldly alleging that a defendant made defamatory statements devoid of constitutional protection. Instead, the plaintiff must clearly and specifically allege the content and context of the challenged statements and why and how they were defamatory.

**¶17**    Accepting as true the allegations in BLK's complaint and the declarations that BLK submitted in response to the motion to dismiss, it is *possible* the Defendants' noise complaints were false because live performances at BLK Live did not exceed permitted levels or because the complaints were about recorded (not live) music at BLK Live or about music coming from another venue entirely. But BLK did not identify any specific complaint the Defendants made, nor did it show why any specific complaint was false. Instead, BLK offered broad summaries of complaints it asserts the Defendants made, but those summaries lack the requisite specificity to allow the court to determine that they contained objectively verifiable statements of fact, as BLK asserts. For this reason, the superior court properly rejected BLK's contention that the Defendants' noise complaints were not constitutionally protected because they were defamatory.[2]

---

[2]    BLK bore the burden of alleging specific facts that, if true, proved that the Defendants' statements to the police and council members were defamatory and therefore not constitutionally protected. In response to the Defendants' motion to dismiss, BLK could have made the allegations of its complaint more specific by offering affidavits "stating facts" on which its claims were based, but it failed to do so. A.R.S. § 12-752(B).

Instead, BLK pointed to the Defendants' declarations, but the Defendants' declarations do not recount the precise language used in any specific noise complaint. Instead, the declarations generally describe the music emanating from BLK Live as loud, recognizable, disruptive, audible over television programming, and stress-inducing. If the content of the Defendants' noise complaints was limited to the descriptions set forth in

¶18        BLK next argues the Defendants' noise complaints to the police and two city council members were not protected by A.R.S. § 12-752 because they were not "[m]ade before or submitted to a legislative or executive body or any other governmental proceeding." A.R.S. § 12-751(1)(a). As defined within A.R.S. § 12-751(2), a "'[g]overnmental proceeding' means any proceeding, other than a judicial proceeding, by an officer, official or body of this state and any political subdivision of this state, including boards and commissions."

¶19        Without explanation or legal support, BLK asserts that a police department "is not a legislative or executive body or any other governmental proceeding." BLK also argues that only the city council "as a whole" is a legislative body and individual council members are not legislative officials to whom the Defendants could complain under the safeguards of the anti-SLAPP statute. While there is no dispute that statements made or submitted to an executive or legislative body during a formal governmental proceeding satisfy A.R.S. § 12-751(1)(a), statements made or submitted to an "*officer*" or "*official*" during "*any* proceeding, other than a judicial proceeding" also fall within the statute. A.R.S. § 12-751(2) (emphasis added). *Cf. Chamberlain v. Mathis*, 151 Ariz. 551, 553, 555, 557-58 (1986) (recognizing police officers as "executive government officials"). Applying A.R.S. § 12-751(2)'s broad definition of "governmental proceeding" here, reports to the police and statements made to city council members during informal community meetings (as well as a letter and petition submitted to the City) fall within the scope of A.R.S. § 12-752's protection. To the extent there is any ambiguity concerning the statute's construction, a broad reading of A.R.S. § 12-751(1) is consistent with the Legislature's express purpose in enacting the anti-SLAPP provision:

> It is the policy of this state that the rights of citizens and organizations. . . to be involved and participate freely in the process of government shall be encouraged and safeguarded with great diligence. The information, reports, opinions, claims, arguments and other expressions that are provided by citizens and organizations are vital to effective law enforcement, the operation of government, the making of public policy and decisions and the continuation of

the declarations, the complaints were not defamatory as a matter of law. Rather than conveying objectively verifiable facts, the Defendants' descriptions are merely subjective statements of perception. In other words, there is no metric for evaluating the veracity of the Defendants' descriptions.

representative democracy. The laws, courts and other agencies of this state and its political subdivisions shall provide the utmost protection for the free exercise of these petition, speech and association rights.

A.R.S. § 12-751, Sec. 2(A). In fact, the Legislature expressly contemplated that a variety of informal communications would fall under the statute's protection, including "distributing flyers, gathering petitions, [and] writing letters." Amended Senate Fact Sheet, H.B. 2440, 47th Leg., 2d Reg. Sess. (Apr. 19, 2006). Given both the plain language of the statute and the Legislature's purposes in enacting it, the superior court properly found that the Defendants' noise complaints to the police and the two city council members were "[m]ade . . . or submitted to a legislative or executive body or [another] governmental proceeding."

¶20    BLK also argues the Defendants were not exercising "the right of petition" under A.R.S. § 12-751(1) because their statements were not "[m]ade in connection with an issue that [was] under consideration or review" and "for the purpose of influencing a governmental action, decision or result." A.R.S. § 12-751(1)(b), (c). Without disputing that its request to amend the use permit was pending when the Defendants made their noise complaints, BLK nonetheless contends that the noise complaints did not pertain to an issue under the City's consideration because the "permit dealt with issues other than sound." But contrary to BLK's contention, the use permit expressly imposes its own sound limits on the commercial space leased for BLK Live, separate from and in addition to the City's sound ordinance. And there is no dispute that the Defendants made their complaints for the purpose of persuading the City to deny BLK's use permit request. Therefore, the superior court properly found that the noise complaints were an exercise of the Defendants' right of petition under A.R.S. § 12-751(1).

¶21    Under A.R.S. § 12-752(B), the superior court must grant a motion to dismiss a complaint that involves a defendant's exercise of the right of petition unless the plaintiff shows that the defendant's statements (1) did not have "any reasonable factual support or any arguable basis in law," and (2) caused it "actual compensable injury." A.R.S. § 12-752(B). Here, again, the superior court properly found BLK failed to meet its statutory burden. Although BLK argues at length that it did not violate the City's noise ordinance, the Defendants represented that they reported only that BLK Live's music disturbed the peace and enjoyment of their homes. BLK has not negated that showing. In other words, even if BLK proved it did not violate the sound ordinance, such evidence would not disprove the

content of the Defendants' complaints that the sound coming from BLK Live disturbed the peace and enjoyment of their homes.

**¶22** Because the challenged noise complaints were an exercise of the Defendants' right of petition and BLK failed to demonstrate that they lacked reasonable factual or legal support, the superior court properly dismissed BLK's complaint.

## CONCLUSION

**¶23** For the foregoing reasons, we affirm. Citing A.R.S. § 12-752, the Defendants asks for their attorneys' fees and costs incurred on appeal. Pursuant to A.R.S. § 12-752(D), the court "shall award the moving party costs and reasonable attorneys fees" if the court grants the motion to dismiss. Having affirmed the superior court's dismissal, we award the Defendants their reasonable attorneys' fees and costs incurred on appeal, both conditioned upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED: AA

11