18 P.3d 132

**BAUZA HOLDINGS, L.L.C., an Arizona limited liability company, Plaintiff–Appellant,**

v.

**PRIMECO, INC., Defendant–Appellee.**

Nos. 1 CA–CV 99–0102, 1 CA–CV 99–0296.

Court of Appeals of Arizona, Division 1, Department A.

Jan. 25, 2001.

Review Denied May 23, 2001.

Law Offices of Neil Vincent Wake, by Neil Vincent Wake, Phoenix, Attorneys for Plaintiff–Appellant.

Barry Becker, P.C., by Barry Becker, Phoenix, Attorneys for Defendant–Appellee.

## OPINION

FIDEL, Judge.

¶ 1 Bauza Holdings, L.L.C., owner of a tax lien certificate on a parcel of Maricopa County real property, appeals from a judgment declining to foreclose the rights of Primeco, Inc., owner of a separate tax lien certificate on the same parcel. The appeal presents the question whether Arizona's property tax lien statutes permit one tax lien certificate holder to foreclose the rights of a competing tax lien certificate holder. We answer that question in the negative and affirm the judgment.

### BACKGROUND

¶ 2 Delinquent real property taxes become a lien on the property. To secure the payment of unpaid delinquent taxes, county treasurers sell tax liens, which are interest-bearing investments. A.R.S. § 42–18101 et seq.[1] Upon a tax lien sale, the treasurer issues the purchaser a certificate of purchase, known as a tax lien certificate, reciting, among other things, the tax year or years for which the lien was sold. A.R.S. § 42–18118.

¶ 3 In keeping with A.R.S. § 42–18104(B), a county might require tax lien certificate purchasers to pay the aggregate amount of all delinquent taxes, penalties, interest, and charges on the property for current and preceding years, including those encompassed by outstanding, still unredeemed, tax lien certificates.[2] Maricopa County, however, follows a different practice. Exercising its apparent leeway under A.R.S. § 42–18104(C), Maricopa County sells tax liens that encompass delinquencies for tax years not previously sold to private investors, but does not require the purchaser to also pay delinquencies for years encompassed by earlier tax lien certificates. In Maricopa and other counties that follow this practice, separate purchasers in separate years may acquire competing tax lien certificates on the same parcel. That is what happened in this case.

¶ 4 At a public sale in 1991, Bauza's remote assignor bought a lien for the 1989 taxes on the subject property and received a tax lien certificate. Bauza's assignor later acquired that certificate and paid delinquent 1990 and 1993 taxes on the property, expanding its lien to encompass those taxes as permitted by A.R.S. § 42–18121. Meanwhile Primeco bought liens on the same property for tax years 1991, 1992, and 1994 and received a tax lien certificate encompassing amounts due for those years.

¶ 5 Tax lien certificates are subject to redemption by the property owner; the owner's agent, assignee, or attorney; or the owner of a competing tax lien certificate. A.R.S. § 42–18151(A). If a tax lien certificate is not redeemed within three years from the date of purchase, the purchaser may bring an action in the superior court to foreclose the right to redeem. A.R.S. §§ 42–18201 through 18207. It follows that among competing tax lien certificate holders, the earliest purchaser will complete the three-year waiting period first

---

**1.** 1997 Ariz. Sess. Laws, ch. 150 comprehensively reorganized and renumbered the sections comprising Title 42, A.R.S., without substantively changing the sections that apply to this controversy. Additional revisions were accomplished by 2000 Ariz. Sess. Laws, ch. 84. To facilitate the application of this opinion, we use the current numbering.

**2.** A.R.S. § 42–18104 provides:

   A. The delinquent taxes for which a real property tax lien may be sold pursuant to this article are not limited to unpaid taxes for any particular year or years.

   B. The county treasurer shall advertise and sell the tax lien for the aggregate amount of all unpaid taxes that are delinquent on the property, together with all penalties, interest and charges respectively due for the current or preceding years, whether or not the aggregate amount or any part has been reduced to judgment.

   C. The failure to include the unpaid taxes of any year does not invalidate a sale for unpaid taxes that are delinquent for any other year or years.

and have the earliest opportunity to fore-close.

¶ 6 In March 1995 Bauza's assignor brought this action to foreclose the right to redeem under its tax lien certificate covering the 1989, 1990, and 1993 tax years. Primeco answered and counterclaimed for foreclosure under its own tax lien certificate covering the 1991, 1992, and 1994 tax years. Bauza eventually stepped into its assignor's shoes. On cross-motions for summary judgment, the trial court ruled that foreclosure of one tax lien does not cut off rights under a competing tax lien. The court reasoned,

> Certificates of Purchase[ ] are superior to all other liens or encumbrances except for those held by the state and, thus, are co-equal in terms of priority. No tax lien or Certificate of Purchase may extinguish another. Tax liens and Certificates of Purchase may only be satisfied or removed through the means set forth in [A.R.S. § 42–17153(C) ].[3]

The issuance of the tax deed based upon foreclosure of a Certificate of Purchase, however, subjects the grantee in the tax deed to foreclosure by any outstanding Certificate of Purchase. Thus, the statutory scheme is interpreted to avoid a "rush to judgment" or a "first to judgment forecloses all" approach. In order to protect their investment, Certificate of Purchase holders from tax sales must either buy (or redeem) the other out or make other arrangements prior to the issuance of any tax deed. When the real property has unpaid taxes, tax liens and outstanding Certificates of Purchase in excess of the market value of the real property, the competing holders of Certificates of Purchase must negotiate with each other and the taxing authority rather than negotiating with only the taxing authority pursuant to [A.R.S. § 42–18124].[4]

... [T]he foreclosing Certificate of Purchase holder acquires fee title subject only to prior and subsequent real property tax-

es, real property tax Certificates of Purchase and prior liens of the state.

¶ 7 From a final order and amended judgment of foreclosure entered in accordance with that ruling, Bauza timely appeals.

## PRIORITY OR PARITY

[1] ¶ 8 Bauza contends that, as owner of the tax lien certificate first eligible for fore-closure under the three-year timetable of A.R.S. § 42–18201, it enjoyed a statutory priority among lienholders. If Primeco, a later lienholder, wanted to avoid the risk that Bauza, the earlier lienholder, could extinguish Primeco's redemption rights by undertaking a foreclosure, Primeco should have protected itself in advance by exercising its opportunity to redeem Bauza's lien pursuant to A.R.S. § 42–18151(A)(3), paying the taxes, penalties, interest, and charges encompassed by the lien.

¶ 9 Primeco responds that the applicable statutes do not establish priority but rather parity among lienholders. No lienholder can extinguish the lien of another except by redeeming it. One who forecloses without first redeeming competing tax liens takes its tax deed to the property subject to those liens.

¶ 10 The ambiguity that generates this controversy arises from a comparison of related sections of the tax code. Bauza supports its assertion that foreclosure by one lienholder extinguishes all competing liens by reference to three sections that address redemption and foreclosure. A.R.S. § 42–18151(A)(3) permits "[a]ny person who has a legal or equitable claim in the property, including a certificate of purchase of a different date" to redeem a tax lien sold under A.R.S. § 42–18101; A.R.S. § 42–18201 allows the holder of a tax lien certificate to bring an action in superior court at any time beginning three years after the tax lien sale "to foreclose the right to redeem"; and A.R.S. § 42–18204 provides:

> A. In an action to foreclose the right to redeem, if the court finds that the sale is

---

3. *See infra* ¶¶ 11, 12.

4. A.R.S. § 42–18124 permits the board of supervisors to compromise if it appears that a property

"is not worth the amount of taxes, interest, costs and penalties due or that the tax lien on the property would not sell for that amount."

valid, and that the tax lien has not been redeemed, the court shall enter judgment:

1. Foreclosing the right of the defendant to redeem.

2. Directing the county treasurer to expeditiously execute and deliver to the party in whose favor judgment is entered, including the state, a deed conveying the property described in the certificate of purchase.

B. *After entering judgment the parties whose rights to redeem the tax lien are thereby foreclosed have no further legal or equitable right, title or interest in the property subject to the right of appeal and stay of execution as in other civil actions.*

C. The foreclosure of the right to redeem does not extinguish any easement on or appurtenant to the property.

(Emphasis added.) None of these statutes excludes tax lien certificate holders from among those whose right to redeem may be foreclosed. What these statutes do not expressly exclude, according to Bauza, they should be read to include.

¶ 11 Primeco, on the other hand, supports its position by reference to A.R.S. § 42–17153(C)(3), which provides that a tax lien is "prior and superior to all other liens and encumbrances on the property, except liens or encumbrances held by this state." All tax liens, pursuant to this statute, enjoy equal priority and superiority over other types of liens and encumbrances, according to Primeco; and as the statute does not make any one tax lien prior or superior to another, what the statute does not include—a priority ranking among tax liens—it should be read to exclude.

¶ 12 A more ambiguous part of the statutory scheme is A.R.S. § 42–17153(C)(2), which lists only three means by which a tax lien may be "satisfied or removed." The two means pertinent to this case are "(a) The

taxes, penalties, charges and interest are paid," and "(b) Title to the property has finally vested in a purchaser under a sale for taxes." Bauza argues that the latter exception, § 42–17153(C)(2)(b), should be read comprehensively to include the vesting of title in *any* purchaser, including a competing tax lienholder. Thus, according to Bauza, when a tax lienholder exercises its option to foreclose and purchases the property at the resulting sale, the sale satisfies and removes *every* tax lien on the property, not merely the purchaser's own lien. Primeco, on the other hand, argues that § 42–17153(C)(2)(b), when read in context, merely codifies the doctrine of merger and extinguishment: an individual tax lien is extinguished and merged into the deed that its owner achieves by conducting a foreclosure. Thus, the purchaser who forecloses removes his *own* lien pursuant to § 42–17153(C)(2)(b), merging the lien into the resulting deed, but the purchaser may only remove other tax liens by satisfying § 42–17153(C)(2)(a) and paying the taxes, penalties, charges, and interest encompassed by those liens. It would be manifestly absurd, according to Primeco, to permit one tax lienholder to purchase the property free and clear from liens for other tax obligations on the property.

¶ 13 Whatever meaning might be attributed to any of these statutes standing alone, the interpretive challenge for the court is to read them standing together. The question that confronts us has inhered in Arizona's lien foreclosure statutes since they were first adopted in 1931. *See* Ariz.Code Ann. §§ 73–506, 73–801, 73–806, 73–820, 73–823, 73–824, 73–828, 73–831, 73–832 (1939). Unfortunately, it is not answered by the Arizona cases that have interpreted the statutory scheme to date.[5]

5. *See Allied Am. Inv. Co. v. Pettit,* 65 Ariz. 283, 179 P.2d 437 (1947) (tax lien forecloser did not acquire title to streets or parcel previously dedicated to Maricopa County as a public park); *Shumway v. State,* 63 Ariz. 400, 163 P.2d 274 (1945) (tax lien had priority over earlier mortgage assigned to private individual by state); *Linville v. Cheney,* 60 Ariz. 325, 137 P.2d 395 (1943) (tax liens held by state were not affected by foreclosure of plaintiff's tax lien; statute gave express priority to state's liens over those bought by private party), *overruled in part on other grounds by State v. Miami Trust Co.,* 61 Ariz. 499, 152 P.2d 131 (1944) (statutory five-year limitations period on tax actions was valid); *Steinfeld v. State,* 37 Ariz. 389, 294 P. 834 (1930) (privately held tax lien took priority over earlier mortgage held by state (decided before statutory change that applied in *Linville* )).

■ ¶ 14 To resolve potential conflict among related statutes, a court need not confine its examination to the literal wording of those statutes alone, but may draw assistance from the network of related statutes of which those to be interpreted form a part:

If reasonably practical, a statute should be explained in conjunction with other statutes to the end that they may be harmonious and consistent. If the statutes relate to the same subject or have the same general purpose ... they should be read in connection with, or should be construed together with other related statutes, as though they constituted one law. As they must be construed as one system governed by one spirit and policy, the legislative intent therefor must be ascertained not alone from the literal meaning of the wording of the statutes but also from the view of the whole system of related statutes.

*State ex rel. Larson v. Farley*, 106 Ariz. 119, 122, 471 P.2d 731, 734 (1970).

¶ 15 The purpose of the whole system of related tax lien statutes, as we have indicated, is to enable the state and counties to recover delinquent taxes. To function as intended, the tax lien sale and foreclosure process must motivate private investors to pay delinquent taxes, penalties, and interest on particular properties as an investment. Private investors will be willing to do so only if tax liens confer a bundle of rights that is both attractive and secure.

¶ 16 The thrust of the governing statutes is to maximize those characteristics. Sums that investors pay to acquire tax liens bear simple interest of up to 16% per annum.[6] Tax liens enjoy super-priority over all other liens except those held by the state. A.R.S. § 42–17153(C)(3). After three years, the tax lien investor has the opportunity to acquire full title to the property for the price of the delinquent taxes, interest, penalties, and the

cost of judicial foreclosure. A.R.S. §§ 42–18201, 42–18204, 42–18205.

¶ 17 For some properties, tax lien investors may deem it prudent to redeem all preexisting tax lien certificates when they purchase a current tax lien. Tax liens are more affordable, however, and more prospective purchasers may be drawn to the tax lien market, if such purchasers can buy a current lien without paying the additional sums necessary to buy out holders of liens for past delinquent years. This consideration undoubtedly underlies A.R.S. § 42–18104(C) and motivates counties such as Maricopa to exercise their leeway pursuant to that statute to sell tax liens for presently accruing delinquencies without requiring buyers to redeem all preexisting tax liens on the property. *See supra* ¶ 3.

¶ 18 Under A.R.S. § 42–18121, a complementary statute, however, a tax lien certificate holder can preclude the purchase of subsequent competing certificates, for the first certificate holder can pay subsequent delinquent taxes as they accrue and add those taxes to its lien.[7] (By this means Bauza's assignor expanded its 1989 lien to include delinquent 1990 and 1993 taxes on the property. *See supra* ¶ 4.) Only if a certificate holder forgoes the statutory opportunity to pay subsequently accruing delinquent taxes will those taxes become a lien subject to purchase by a competing certificate holder at a public tax lien sale.

¶ 19 To adopt Bauza's view of the foreclosure process would, in our view, undercut these aspects of the tax lien scheme. If the earliest lienholder, the first able to undertake foreclosure, could through foreclosure extinguish competing liens without paying the taxes and related charges encompassed by those liens, the earliest lienholder would lack incentive to exercise its option under § 42–18121 to pay subsequent delinquent taxes as they

6. Pursuant to A.R.S. § 42–18114, a successful bidder is the person who pays the whole amount of delinquent taxes, interest, penalties and charges due and who offers to accept the lowest redemption interest rate, which may not exceed the amount set by § 42–18053—presently 16% per annum.

7. A.R.S. § 18121(A) provides:

On or after June 1, if a person who holds a certificate of purchase desires to pay subsequent taxes, accrued interest and related fees due on the property, the person shall exhibit the certificate or receipt of registered certificate to the county treasurer. The treasurer shall enter the amount of the payment on the certificate and on the record of tax lien sales.

accrue. Additionally, to adopt Bauza's interpretation would impair the market for successive tax lien sales. Investors who might otherwise be attracted to enter the market for current liens would be discouraged from bidding if, to do so, they must pay off all existing liens or face the danger of foreclosure without redemption by the owners of liens for prior years. In contrast, the trial court's interpretation, and that advanced by Primeco, accommodates a system that permits sales of successive liens, for it requires all tax liens to be redeemed or compromised by a foreclosing purchaser who seeks title free and clear.

¶ 20 Primeco's interpretation of the foreclosure process—its conclusion that foreclosure by one tax lienholder does not extinguish competing liens—is bolstered by A.R.S. § 42–18202, which requires a purchaser to provide at least 30 days' notice of intent to file a foreclosure before filing an action to foreclose the right to redeem. The statute lists those who must receive such notice by certified mail. The list includes the "property owner of record," and the "treasurer of the county in which the real property is located," but does not include the holders of other tax liens. *See* A.R.S. § 42–18202(A)(1), (2). Given the super-priority accorded to tax lienholders, if the legislature had intended foreclosure by one tax lienholder to extinguish all competing liens, we believe the legislature would have included tax lienholders among those entitled to such notice.

¶ 21 Bauza argues, however, that foreclosure is a vital element of the statutory scheme, for it enables the return of property to productive use, and that to attribute parity to competing tax lien certificates would discourage foreclosure and impede the return of property to productivity. A prudent certificate holder, according to Bauza, would hesitate to undertake a foreclosure that failed to clear competing tax liens from the property, for such a foreclosure would expose the foreclosing lienholder, upon becoming the owner of a tax deed, to foreclosure in its turn by the holders of unextinguished liens.

¶ 22 The trial court addressed this consideration, but rejected what it characterized as Bauza's "rush to judgment" or "first to judg-ment forecloses all" solution. The court stated, "In order to protect their investment, Certificate of Purchase holders from tax sales must either buy (or redeem) the other out or make other arrangements prior to the issuance of any tax deed." Bauza replies that in some cases the cost of redeeming competing liens will exceed the market value of the property, rendering a buy-out impractical. But the trial court addressed this concern as well, reasoning that in such instances, "the competing holders of Certificates of Purchase must negotiate with each other and the taxing authority rather than negotiating with only the taxing authority pursuant to [A.R.S. § 42–18124]."

¶ 23 We conclude that the trial court has reasonably and sensibly interpreted a system that permits successive purchases by multiple lienholders, but permits a first lienholder to preclude successive purchases by paying subsequent delinquent taxes as they accrue. *See* A.R.S. §§ 42–18104(C), 42–18121. Like the trial court, we interpret § 42–17153(C)(3) to assign tax liens priority over other kinds of liens, but not to assign one tax lien priority over another. We interpret § 42–17153(C)(2)(b) to provide that a tax lien is extinguished upon the vesting of title in the holder of that particular tax lien, not on the foreclosure of a competing tax lien. We do not interpret A.R.S. § 42–18204(B) to provide that a judgment foreclosing a tax lien terminates all right, title, and interest of every party defendant who had statutory redemption rights, but rather to provide that the judgment terminates all right, title, and interest of every party defendant whose statutory redemption rights were capable of extinguishment by foreclosure—a class to which holders of competing tax lien certificates on the property do not belong.

¶ 24 We recognize that the statutes, as we interpret them, entail disincentives toward foreclosure in instances when accruing delinquencies total more than a property is reasonably worth. But the legislature has provided counties the authority to negotiate a compromise with a foreclosing certificate holder in such circumstances. *See* A.R.S. § 42–18124. And the trial court has reasonably concluded that, when such circum-

stances arise in a system that tolerates multiple certificate holders, other certificate holders must be included in the negotiations.

## CONCLUSION

¶ 25 A tax lien and foreclosure system might be constructed in various ways, and each way will embody its own peculiar incentives and disincentives. This case highlights some of the incentives, disincentives, and modes of operation under the current system. Because that system is entirely a creature of statute, the legislature is free to revise it if it deems another more productive. For the reasons set forth in this opinion, the judgment of the trial court is affirmed.

CONCURRING: REBECCA WHITE BERCH, Judge, and CECIL B. PATTERSON, JR., Judge.

