91 P.3d 1031

**PINAL VISTA PROPERTIES, L.L.C., an Arizona limited liability company, Plaintiff–Appellant,**

v.

**Jim L. TURNBULL, Pinal County Treasurer; Pinal County Board of Supervisors and Lionel D. Ruiz, Sandie Smith, Jimmie B. Kerr, as members of and constituting the Board of Supervisors, Pinal County; Pinal County, a political subdivision of the State of Arizona; State of Arizona ex rel. Pinal County Board of Supervisors, Real Party in Interest, Defendants–Appellees.**

No. 1CA–TX 03–0008.

Court of Appeals of Arizona, Division 1, Department T.

June 17, 2004.

189

Mark L. Manoil, P.C. by Mark L. Manoil, Phoenix, Attorneys for Plaintiff–Appellant.

Terry Goddard, Attorney General by J.W. Ranby, Assistant Attorney General, Phoenix, Attorneys for Defendant–Appellee State of Arizona.

Helm & Kyle, Ltd. by Roberta S. Livesay, Tempe, Attorneys for Defendant–Appellee Turnbull, Pinal County, and Pinal County Board of Supervisors.

## OPINION

HALL, Judge.

¶ 1 Pinal Vista Properties, L.L.C. (Pinal Vista) appeals from summary judgment in favor of Pinal County (County) and the State

of Arizona (State) (collectively, Defendants). The issue presented is whether the transfer of real property to the State by issuance of a treasurer's tax deed extinguishes any privately held tax liens.

¶ 2 The relevant facts are undisputed. In October 2001, Pinal Vista acquired Pinal County Certificate of Purchase No. 143308–87 (the CP) for Tax Assessor's Parcel No. 101–06–005D0 (the Property) by assignment. The CP evidenced payment of delinquent taxes for the years 1987 through 1992 and represented a $70,312.46 investment by Pinal Vista's predecessor in interest.

¶ 3 In 1992, the Pinal County Assessor (the Assessor) initially valued the land covered by the CP at $59,242 and the improvements at $170,016. The Assessor subsequently learned that the improvements had been destroyed, presumably by a fire. Accordingly, the Assessor revalued the Property for the 1993 tax year at the full cash value of $29,621 and changed the assessment ratio to reflect the Property's new status as vacant land.

¶ 4 Because no one purchased any of the subsequently accruing tax liens, they were assigned to the State pursuant to Arizona Revised Statutes (A.R.S.) section 42–18113 (1999). On June 4, 2001, after giving notice to lienholders, the Pinal County Board of Supervisors foreclosed on the Property and issued a treasurer's deed to the Property to the State in accordance with A.R.S. § 42–18261 (1999).

¶ 5 On November 21, 2001, Pinal Vista filed a claim against the Defendants for the redemption value of the tax liens, which it calculated to be $167,926.50 plus accruing interest. When the County declined to act, Pinal Vista sued for a declaratory judgment and special action relief. The parties filed cross-motions for summary judgment. The trial court granted the Defendants' motions and entered judgment accordingly.

## DISCUSSION

¶ 6 On appeal from a summary judgment in which the material facts are not in dispute, we review the issues of law de novo and determine only whether the tax court correctly applied the law to the undis-

puted facts. *Southern Pac. Transp. Co. v. Dep't of Revenue,* 202 Ariz. 326, 329–30, ¶ 7, 44 P.3d 1006, 1009–10 (App.2002). Questions of statutory interpretation are issues of law and also subject to de novo review. *Boynton v. Anderson,* 205 Ariz. 45, 46, ¶ 4, 66 P.3d 88, 89 (App.2003).

# I

¶ 7 To secure payment of delinquent taxes on real property, a county treasurer may sell a tax lien at a judicial sale. A.R.S. §§ 42–18101 to –18126 (1999). Following the sale, the treasurer issues a certificate of purchase to the successful bidder. § 42–18118. The certificate is evidence of the holder's right to a treasurer's deed at the end of the applicable statutory period. A.R.S. §§ 42–18201 to –18207 (1999).

¶ 8 Relying on *Bauza Holdings, L.L.C. v. Primeco, Inc.,* 199 Ariz. 338, 18 P.3d 132 (App.2001), Pinal Vista argues that A.R.S. § 42–17153 (1999) requires governmental entities that acquire real property to take such property subject to any existing tax liens. In *Bauza,* one tax lien investor sought to foreclose the right of another tax lien investor through judicial foreclosure. *Id.* at 339, ¶ 1, 18 P.3d at 133. Both investors were private purchasers of tax lien certificates and each held certificates for three nonconsecutive years of delinquent taxes. *Id.* at 340, ¶ 6, 18 P.3d at 134. Reasoning that A.R.S. § 42–17153(B)(3) (1999),[1] *amended by* 2001 Ariz. Sess. Laws, ch. 242, § 1, establishes parity, not priorities, between tax lienholders, we required the foreclosing lienholder to redeem or compromise competing liens to receive free and clear title to the property. *Id.* at 343, ¶¶ 19–23, 18 P.3d at 137.

¶ 9 Pinal Vista argues that *Bauza* requires that the State be treated no differently than private investors, i.e., that property tax liens held by the State have parity, not priority, over other-year property tax liens sold to a certificate of purchase holder. Defendants assert that *Bauza's* determination that "parity" exists amongst private holders of CPs has no application to the issue here, namely, does the conveyance of title to real property to the State by issuance of a treasurer's tax deed extinguish all privately held tax liens?

¶ 10 To answer this question we must examine related provisions of Arizona's property tax lien statutes. Our primary goal in construing a statute is to determine and give effect to the intent of the legislature. *Luchanski v. Congrove,* 193 Ariz. 176, 178, ¶ 9, 971 P.2d 636, 638 (App.1998). Generally, when the language of the statute is clear, we follow its direction without resorting to other methods of statutory interpretation. *Bilke v. State,* 206 Ariz. 462, 464, ¶ 11, 80 P.3d 269, 271 (2003). However, statutes relating to the same subject or having the same general purpose, i.e., statutes that are in *pari materia,* "should be read in connection with, or should be construed with other related statutes, as though they constituted one law." *Bauza,* 199 Ariz. at 342, ¶ 14, 18 P.3d at 136 (quoting *State ex rel. Larson v. Farley,* 106 Ariz. 119, 122, 471 P.2d 731, 734 (1970)). Further, each word or phrase of a statute must be given meaning so that no part is rendered void, superfluous, contradictory or insignificant. *Guzman v. Guzman,* 175 Ariz. 183, 187, 854 P.2d 1169, 1173 (App.1993).

---

1. As in effect during the applicable time frame in *Bauza* and in this case, § 42–17153 provided in relevant part:

    A. [A] tax that is levied on real or personal property is a lien on the assessed property.
    B. The lien:
    1. Attaches on January 1 of each year.
    2. Is not satisfied or removed until one of the following occurs:
    (a) The taxes, penalties, charges and interest are paid.
    (b) Title to the property has finally vested in a purchaser under a sale for taxes.
    (c) A certificate of removal and abatement has been issued pursuant to § 42–18353.

3. Is prior and superior to all other liens and encumbrances on the property, except liens or encumbrances held by this state.

    The Legislature codified *Bauza* in 2001. *See* 2001 Ariz. Sess. Laws, ch. 242, § 1. As amended and renumbered, former subsection (B)(3) now provides that a tax lien "is prior and superior to all other liens and encumbrances on the property, except: (a) Liens or encumbrances held by this state; (b) Liens for taxes accruing in any other years." A.R.S. § 42–17153(C)(3) (Supp. 2003).

¶ 11 We begin by examining § 42–17153(B)(3), which provides that a tax lien "is prior and superior to all other liens and encumbrances on the property, except liens or encumbrances held by this state." In *Bauza*, we interpreted the first clause, in conjunction with § 42–18204(B),[2] applicable to judicial foreclosures of redemption rights, as establishing parity among private tax lienholders. Pinal Vista argues that we should similarly interpret the language "except liens or encumbrances held by this state" as establishing parity between the State and private lienholders. We disagree.

¶ 12 Arguably, the quoted language standing alone supports Pinal Vista's argument in favor of parity rather than superiority of tax liens held by the State. However, a "parity" interpretation is inconsistent with the etiology of the exception language, which can be traced to *Steinfeld v. State*, 37 Ariz. 389, 294 P. 834 (1930). In *Steinfeld*, the supreme court construed paragraph 4845 of the 1913 Civil Code, the remote predecessor to § 42–17153, as treating a privately held tax lien superior to a prior mortgage held by the state. The court based its holding on the last sentence of paragraph 4845, which provided that a tax lien "shall be prior and superior to all other liens and encumbrances upon the said property."[3] In response, the Legislature amended the last sentence to read: "The lien shall be prior and superior to all other liens and encumbrances upon the property, *except liens or encumbrances held by the state of Arizona*." 1931 Ariz. Sess. Laws, ch. 106, § 1. (Emphasis added.) The purpose of the amendment was to supercede *Steinfeld* and provide that state liens, of any type whatsoever, were superior to—and not simply on an equal footing with—tax liens held by private investors. *State v. Martin*, 59 Ariz. 438, 443, 130 P.2d 48, 50 (1942) (recognizing that the amendment "was a very

definite and plain declaration by the legislature that mortgages held by the state were a lien prior and superior to a tax lien"); *Shumway v. State*, 63 Ariz. 400, 406, 163 P.2d 274, 276 (1945) (same). Moreover, under Arizona's statutory scheme for the collection of taxes, state tax liens, unlike state mortgages, have historically been accorded superior status *vis-à-vis* all other tax liens. *See, e.g., Bd. of Supervisors of Yuma County v. Miners & Merchants Bank of Bisbee*, 59 Ariz. 460, 470, 130 P.2d 43, 47 (1942) (upon issuance of tax deed to State, paragraph 4845 and related tax sale procedures "wiped out" previously existing tax lien arising from levy of special tax by county); *City of Phoenix v. Elias*, 64 Ariz. 95, 166 P.2d 589 (1946) (issuance of a tax deed to the State extinguished pre-existing City of Phoenix tax liens).

¶ 13 The Legislature's intent to treat state tax liens as superior to those held by private investors is clarified when one considers A.R.S. §§ 42–18261 to –18267 (1999) (Title 42, Chapter 18, Article 6.1), which govern conveyances to the State on failure to redeem. In such administrative proceedings, the county treasurer is required, before preparing a treasurer's deed, to conduct a limited title search sufficient to "identify all parties who have a legal or equitable interest in the property recorded with the county recorder," § 42–18263, and to provide notice to such persons by certified mail at least ninety days before the date of delivering the deed to the board of supervisors, § 42–18264. Then, if the tax lien is not redeemed before the date stated in the notice, § 42–18267 requires that the county treasurer

execute and deliver to the board of supervisors, acting on behalf of this state, a treasurer's deed conveying to the state of Arizona the real property that was assigned at the tax sale. On the delivery of

---

**2.** Section 42–18204(B) provides: "After entering judgment the parties whose rights to redeem the tax lien are thereby foreclosed have no further legal or equitable right, title or interest in the property subject to the right of appeal and stay of execution as in other civil actions."

**3.** Paragraph 4845 read in full:
Every tax levied under the provisions or authority of this act upon any real or personal

property is hereby made a lien upon the property assessed, which lien shall attach on the first Monday in January in each year and shall not be satisfied or removed until such taxes, penalty, charges, and interest are all paid, or the property has absolutely vested in a purchaser under a sale for taxes. Said lien shall be prior and superior to all other liens and encumbrances upon the said property.

the deed, *the redemption rights of all persons terminate,* whether or not they were named in the notice.

(Emphasis added.) The holder of a certificate of purchase has a legal or equitable interest in the property that may be recorded with the county recorder. *See* A.R.S. §§ 42–18117, –18151(A)(3) (1999). Thus, a tax lienholder may ensure receipt of a notice of a pending administrative foreclosure by recording its interest with the county recorder. In contrast, the judicial foreclosure proceeding at issue in *Bauza* did not require that notice be provided to holders of other tax liens, 199 Ariz. at 343, ¶ 20, 18 P.3d at 137 (citing § 42–18202 (1999)), a circumstance that "bolstered" the court's conclusion that foreclosure by one tax lienholder does not extinguish competing liens: "Given the super-priority accorded to tax lienholders, if the legislature had intended foreclosure by one tax lienholder to extinguish all competing liens, we believe the legislature would have included tax lienholders among those entitled to such notice." *Id.* Conversely, the notice requirement of §§ 42–18263 and 42–18264 lends further support to our conclusion that the transfer of real property to the State by issuance of a treasurer's tax deed extinguishes any privately held tax liens.

■ ¶ 14 Pinal Vista's reliance on *Bauza* is further undercut because in an administrative foreclosure proceeding neither the State nor County stand in the same shoes as a private investor in tax lien certificates:

> [T]he state, in taking title to property for non-payment of taxes, acts solely in aid of the taxing authorities in collecting taxes against the property and for that purpose takes title to the property in its governmental capacity and not as a proprietor.

*Bigler v. Graham County,* 128 Ariz. 474, 476, 626 P.2d 1106, 1108 (App.1981) (citation omitted). In that capacity, "[t]he State is authorized to accept title, not for the purpose of profiting therefrom but to take care of a temporary situation and to insure the pay-

ment by the owner of the taxes that are paid by all property owners." *Hill v. Gila County,* 56 Ariz. 317, 324, 107 P.2d 377, 379 (1940). *See* A.R.S. §§ 42–18301 to –18303 (1999) (providing for sale of land held by the state by tax deed with proceeds used to pay off back taxes). Taken as a whole, the statutory scheme benefits the public by providing an orderly means to transfer title to the state and return properties to productive, tax-paying status.

¶ 15 The contrary approach advocated by Pinal Vista would put the State in the curious positions of making private tax lien investments secure and of paying its own taxes by redeeming the liens. Not only would the Property escape taxation for the years covered by Pinal Vista's CP, but the State would have to pay a penalty for the exemption in the form of interest to Pinal Vista. As a result, investors would be encouraged to purchase tax liens beyond full cash value, wait for the State to take title, and receive sixteen percent interest on the guaranteed investment. *See* A.R.S. § 42–18053 (1999) (establishing interest on delinquent taxes "at the rate of sixteen per cent per year simple until paid"). Even assuming some ambiguity in the statutory scheme, the Legislature could not have intended such a result. *Knight Transp., Inc. v. Ariz. Dep't of Transp.,* 203 Ariz. 447, 452, ¶ 22, 55 P.3d 790, 795 (App. 2002) (noting statutes must be given a sensible construction that accomplishes the legislative intent and avoids absurd results).[4]

## II

■ ¶ 16 Pinal Vista nonetheless argues that A.R.S. § 37–804 (2003) mandates that the State take title subject to the treasurer's deed. The statute provides:

> A. If this state or any agency or instrumentality of this state acquires real or personal property, whether by purchase, exchange, condemnation, gift or otherwise, the entity acquiring the title to the property may require the

---

4. Indeed, the *Bauza* court acknowledged that state tax liens are entitled to priority over those purchased by a private party. *Id.* at 341, ¶ 13 n. 5, 18 P.3d at 135 n. 5 (citing *Linville v. Cheney,* 60 Ariz. 325, 137 P.2d 395 (1943) for proposition that "tax liens held by state were not affected by foreclosure of plaintiff's tax lien; statute gave express priority to state's liens over those bought by private party").

owner of subject property to provide sufficient funds to pay to the county treasurer any taxes on the property that were unpaid as of the date of acquisition, including penalties and interest, prorated to reflect the area of the acquisition.

B. The lien for unpaid delinquent taxes, penalties and interest on property acquired by this state:

1. Is not abated, extinguished, discharged or merged in the title to the property.

2. Is enforceable in the same manner as other delinquent tax liens.

¶ 17 Subsection A empowers the government, when acquiring property, to demand that the owner or seller set aside "funds" to pay all taxes including penalties and interest due on the property. Clearly, this section has no application here. The owner had failed to pay real property taxes for more than five years. Statutes cannot be interpreted to require a futile act. *See Campbell v. Superior Court*, 105 Ariz. 252, 255, 462 P.2d 801, 804 (1969) (holding that there is a presumption that legislatures do not intend to act in a futile manner by including a provision that is not operative or that is inert or trivial). In this case, requiring the owner to pay the delinquent taxes would be futile.

¶ 18 Pinal Vista's argument fares no better under subsection B. That section provides that any taxes unpaid at acquisition survive and become a lien on the Property. Arizona follows a policy that the government, when acting in a purely governmental capacity, cannot be subjected to taxes. *See Interlott Tech., Inc. v. Ariz. Dep't of Revenue*, 205 Ariz. 452, 458, ¶ 36, 72 P.3d 1271, 1277 (App. 2003) (noting governmental agencies are subject to taxation unless they are exercising purely governmental functions).

¶ 19 When the government obtains property by foreclosing tax liens, it acts in a governmental capacity, not a proprietary capacity. If we interpret A.R.S. § 37–804 (2003) to apply to property acquired by the government only in its proprietary capacity, the dilemma of compelling the State to pay its own taxes as required by Pinal Vista's proposed interpretation of the statute does not exist. Instead, the statute would properly apply when either no prior liens purchased by private investors were at issue or the government acquired the property by means other than a tax lien foreclosure. In the latter instance, the lien would follow the property after the government sold it to a new owner, and the taxes would be paid. This interpretation leaves Title 42 intact and makes sense of § 37–804.[5]

¶ 20 In contrast, under Pinal Vista's interpretation either the government must pay the certificate of purchase holder for the value of its investment or the lien remains attached to the property, thereby decreasing its marketability and possibly delaying its return to tax-paying status.

¶ 21 Moreover, the legislative history surrounding the passage of § 37–804 demonstrates that its purpose was to correct the "adverse impact" of *City of Eloy v. Pinal County*, 158 Ariz. 198, 761 P.2d 1102 (App. 1988). In that case, this court held that pre-

---

5. Pinal Vista argues that *Bigler* somehow eliminates the distinction between the acquisition of property by the government in its proprietary and governmental capacity. As the legislative history demonstrates, this distinction survives the statute's enactment and justifies its existence.

Neither are we persuaded by Pinal Vista's reliance upon *Hill*. *Hill*, like *Bauza*, concerned two *types* of private investors and did not involve a foreclosure of tax liens by the State. Instead, Hill bought the liens and wanted to redeem them. Our supreme court stated:

The duty of the delinquent property to pay taxes does not cease upon a sale thereunder, whether it be to a private investor or to the state. Each year thereafter it is required to be assessed to the owner until title passes to a purchaser or his assignee, or to the state or its assignee....

*Id.* at 322, 107 P.2d at 379. Similarly, when tax certificates are foreclosed, all redemption rights terminate under A.R.S. § 42–18267 (1999).

Likewise, *Christmas Copper Corp. v. Kennedy*, 58 Ariz. 216, 217–18, 118 P.2d 1110, 1111 (1941), provides no support for Pinal Vista's arguments. There, the owner tendered an amount for redemption after the county advertised that the State had applied for a treasurer's deed. Pinal Vista and the Property owner also received notice and chose not to redeem. Unlike the appellant in *Christmas Copper*, Pinal Vista forfeited its property rights.

existing tax liens were extinguished when a city obtained land under the Slum Clearance and Redevelopment Law, A.R.S. § 36–1471. *Id.* at 201, 761 P.2d at 1105. The Legislature was concerned that a taxpayer would "avoid paying due taxes by either selling or transferring the property to a municipality to extinguish the lien" and then leasing the property back from the City. Final Revised Fact Sheet for H.B. 2623 at 1 (Ariz. Sen.1998). To avoid this possibility, the law required the county board of supervisors to approve the abatement of tax liens attached to "property purchased by municipalities." *Id.* Therefore, the Legislature was preventing a private landowner from acting in concert with local government to avoid taxes; it did not intend to allow tax liens to survive a deed to the State acting in its tax collection capacity.

¶ 22 Pinal Vista counters that § 37–804 applies in cases of eminent domain, which by definition require the State to function in a governmental capacity. In such a case, however, the State acts for a specific public use or necessity and not because taxes have not been paid and no investor has stepped forward. More importantly, the statute expressly includes condemnation within its purview, but makes no reference to transfer of title following a lien foreclosure. Moreover, the statute is included under Title 37, not Title 42, thereby indicating that title to property is taken in a proprietary capacity.

■ ¶ 23 Nonetheless, Pinal Vista argues that § 37–804 trumps Title 42, Article 6.1. It is fundamental that when two statutes deal with the same subject, the more specific statute controls. *Pima County v. Heinfeld,* 134 Ariz. 133, 134, 654 P.2d 281, 282 (1982). Whereas § 37–804 is a general statute concerning the acquisition of property by the State, the procedures in Article 6.1 are specific and deal with the transfer of title to the State through a treasurer's deed.[6]

¶ 24 Because we affirm the trial court's ruling on statutory grounds, we do not reach the State's argument that adoption of Pinal Vista's statutory approach would be inconsistent with Article 9, Sections 2(13) and 7 of the Arizona Constitution. *See Goodman v. Samaritan Health Sys.,* 195 Ariz. 502, 505, ¶ 11, 990 P.2d 1061, 1064 (App.1999) ("It is sound judicial policy to avoid deciding a case on constitutional grounds if there are nonconstitutional grounds dispositive of the case.").

## CONCLUSION

¶ 25 We affirm the trial court's summary judgment to the Defendants. In addition, we deny Pinal Vista's request for attorneys' fees.

CONCURRING: DONN KESSLER, Presiding Judge and SUSAN A. EHRLICH, Judge.

---

6. Contrary to Pinal Vista's representation, Article 6.1 is not the "by-product of the Legislature's sunsetting of the administrative foreclosure mechanism for private investors." The provision Pinal Vista refers to is Article 6, the repeal of which will not take effect until January 1, 2006. In any event, the articles serve different functions. Article 6 provides a mechanism for private investors foreclosing tax liens; Article 6.1 addresses governmental lien foreclosure situations like this one.