134 P.3d 400

**SUN VALLEY FINANCIAL SERVICES OF PHOENIX, L.L.C., an Arizona limited liability company, Plaintiff/Appellee,**

v.

**Joe GUZMAN, Defendant/Appellant.**

**No. 1 CA–CV 04–0568.**

Court of Appeals of Arizona, Division 1, Department A.

May 11, 2006.

Joe Guzman, Phoenix, In Propria Persona.

Mark L. Manoil, P.C., by Mark L. Manoil, Phoenix, Attorneys for Plaintiff/Appellee.

## OPINION

NORRIS, Judge.

¶ 1 Plaintiff/Appellee, Sun Valley Financial Services of Phoenix, L.L.C. ("Sun Valley"), purchased a tax lien on real property located in Maricopa County, Arizona. Subsequently, it redeemed a prior tax lien on the property that had been sold to someone else. Although Sun Valley had redeemed the prior tax lien, it nevertheless sued to foreclose the rights to redeem the prior lien held by the property owner's alleged successor in interest, Defendant/Appellant Joe Guzman. The superior court accepted Sun Valley's argu-

ment that it had become equitably subrogated to the rights of the original purchaser of the prior tax lien, entered judgment foreclosing Guzman's right to redeem the prior tax lien and directed the county treasurer to issue a deed conveying the property to Sun Valley.

¶ 2 The fundamental issue presented in this appeal is whether, by redeeming a prior tax lien, a subsequent tax lien purchaser will become equitably subrogated to the rights of the original holder of the prior tax lien, including the right to foreclose the property owner's right to redeem. We hold that under this state's real property tax lien system, as applied to the facts of this case, the subsequent tax lien purchaser will not become equitably subrogated to the rights of the holder of the original prior tax lien. Accordingly, a judgment foreclosing a property owner's right to redeem a tax lien may not be entered if the lien has previously been redeemed. We therefore vacate the judgment entered against Guzman and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶ 3 In Arizona, a tax levied on real property is a lien on the assessed property. Ariz.Rev.Stat. ("A.R.S.") section 42–17153(A) (Supp.2005). To secure the payment of unpaid delinquent taxes on real property, county treasurers are authorized to sell tax liens, which are interest-bearing investments. A.R.S. § 42–18101 (1999); *Bauza Holdings, L.L.C. v. Primeco, Inc.*, 199 Ariz. 338, 339, ¶ 2, 18 P.3d 132, 133 (App.2001). The purchaser of a tax lien receives a certificate of purchase, also known as a tax lien certificate, that discloses, among other information, the date of the sale and the tax year or years for which the tax lien was sold. A.R.S. § 42–18118 (Supp.2005). The tax lien certificate serves as evidence entitling the holder to a deed to the real property if certain statutory conditions are met. *Daystar Inv., L.L.C. v. Maricopa County Treasurer*, 207 Ariz. 569, 570, ¶ 3, 88 P.3d 1181, 1182 (App.2004).

¶ 4 Under state law, counties do not have to require tax lien purchasers to pay

delinquencies for years encompassed by earlier tax lien certificates. *See* A.R.S. § 42–18104(B), (C) (1999); *Bauza,* 199 Ariz. at 339, ¶ 3, 18 P.3d at 133. In counties that follow this practice, such as Maricopa County, purchasers of tax liens on property for different years may acquire competing tax lien certificates. The tax liens will be in parity; an earlier tax lien will not have priority over another tax lien. *Bauza,* 199 Ariz. at 343, ¶ 23, 18 P.3d at 137. In these counties, the holder of a tax lien may not foreclose the rights of a competing tax lien holder.

¶ 5 On February 9, 2004, Sun Valley purchased a tax lien on real property located in Maricopa County for the 2002 tax year ("2002 tax lien") and received a tax lien certificate, CP No. 02003290 ("2002 certificate"). The property's owner of record was an administratively dissolved Arizona corporation, Coastal Investments Corporation ("Coastal"). At the time of Coastal's dissolution, Guzman was its president and chief executive officer.

¶ 6 Real property tax liens may be redeemed by the property owner; the owner's agent, assignee or attorney; or by any person who has a legal or equitable claim in the property, including the holder of a tax lien certificate "of a different date." A.R.S. § 42–18151 (1999). A tax lien is "redeemed" when the property owner or other person authorized by A.R.S. § 42–18151 pays the county treasurer the delinquent taxes, accrued interest and other statutory fees. A.R.S. § 42–18153 (1999).[1] If a tax lien certificate is not redeemed within three years of the date of purchase, the purchaser may bring an action in the superior court to foreclose the property owner's right to redeem. A.R.S. § 42–18201 (Supp.2005). "It follows that among competing tax lien certificate holders, the earliest purchaser will complete the three-year waiting period first and have the earliest opportunity to foreclose." *Bau-*

*za,* 199 Ariz. at 339–40, ¶ 5, 18 P.3d at 133–34.

¶ 7 Accordingly, Sun Valley faced the prospect that a purchaser of a prior tax lien on the property would be able to foreclose before it could do so. This prospect was not hypothetical. The property was subject to a prior tax lien purchased by a party not identified in the record before us. This tax lien was for the tax years 1999 through 2001 ("the 1999 tax lien") and was represented by tax lien certificate CP No. 99003545 ("the 1999 certificate").[2]

¶ 8 The state's tax lien statutes gave Sun Valley a way to avoid the risk that the holder of the 1999 tax lien would foreclose Coastal's right to redeem before Sun Valley could do so. Sun Valley could, as allowed by A.R.S. § 42–18118(C), obtain the 1999 lien directly from its holder through an assignment. *See infra* ¶ 26. If Sun Valley obtained the 1999 tax lien by an assignment it would then step into the shoes of the 1999 tax lien holder and obtain all of the holder's rights, including its right to foreclose.

¶ 9 Instead of acquiring the 1999 tax lien from its holder by assignment, however, Sun Valley elected to pay the Maricopa County Treasurer the amounts necessary to redeem the 1999 tax lien. The county treasurer then issued Sun Valley a certificate evidencing redemption of the 1999 tax lien.[3] Sun Valley attached this certificate to a notice of property tax payment it recorded in the Office of the Maricopa County Recorder on February 12, 2004. Sun Valley's notice recited it had

> paid the property tax lien(s) evidenced in the attached Redemption Certificate(s) without intent to extinguish said lien(s), in order to protect a different interest of Payor [Sun Valley] in the subject property. The recording of the Redemption Certificate(s) is authorized by A.R.S. § 42–18154

---

1. A.R.S. § 42–18153 was recently amended by H.R. 2821, 47th Leg., 2d Reg. Sess. (Ariz.2005) which was signed by Governor Janet Napolitano on April 17, 2006. This amendment does not change the statute as it is relevant to this opinion.

2. Although not explicitly set out in the record, it appears that after purchasing the 1999 tax lien, the holder paid subsequent unpaid, delinquent

taxes due on the property, and, as authorized by statute, these amounts were entered on the 1999 certificate. *See* A.R.S. § 42–18121(A) (1999).

3. *See generally* A.R.S. § 42–18154(A) (1999) ("[I]f the county treasurer is satisfied that the person has the right to redeem the tax lien, and if the person pays the amount due, the county treasurer shall issue to the person a certificate of redemption.").

and provides notice of Payor's interest by right of subrogation in the affected property.

The next day, Sun Valley mailed a letter to Coastal stating it intended to foreclose Coastal's right to redeem the 1999 certificate "by right of subrogation" on or after March 15, 2004.[4]

¶ 10 On April 14, 2004, Sun Valley filed a complaint to foreclose Coastal's right to redeem the 1999 tax lien. It alleged that because it had purchased the 2002 certificate it had become subrogated to the rights of the original purchaser of the 1999 certificate and was entitled to foreclose Coastal's right to redeem because three years had passed since the sale of the 1999 tax lien.

¶ 11 Coastal failed to respond to Sun Valley's complaint. Sun Valley then filed an application for entry of default against Coastal. Guzman, appearing *pro per*, filed a combined answer and motion to dismiss and asserted, as Coastal's "sole heir," that Sun Valley was not entitled to the relief it had requested because Sun Valley had redeemed the 1999 tax lien and Sun Valley had "nothing to foreclose on."

¶ 12 The superior court rejected Guzman's arguments and entered a non-final default judgment foreclosing Coastal's right to redeem the 1999 tax lien. In its judgment, the court essentially found Sun Valley had become subrogated to the rights of the holder of the 1999 tax lien. The court did not, however, enter judgment against Guzman. Instead, it scheduled an evidentiary hearing on Guzman's claim that he was Coastal's "heir."

¶ 13 After conducting the evidentiary hearing, the superior court denied Guzman's motion to dismiss and entered a final judgment against Coastal and Guzman, explaining "the

fact that the corporation was a defunct corporation [ ] does not enhance Mr. Guzman's standing and his right to redeem." The court found Guzman had not established a right to redeem independent of Coastal and, even if Guzman was Coastal's successor in interest, Sun Valley was entitled to foreclose any rights of redemption held by Guzman, noting that Guzman had not tendered redemption of Sun Valley's tax lien claim.[5] The court directed the county treasurer to execute and deliver a deed conveying the property to Sun Valley.[6]

¶ 14 Guzman timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## DISCUSSION

■ ¶ 15 On appeal, Guzman asserts, as he did in the superior court, that Sun Valley was not entitled to foreclose his right to redeem the property because it had already redeemed the 1999 tax lien.[7] Guzman bases his argument on A.R.S. § 42–18201 as well as on A.R.S. § 42–18204(A) which states that a court shall enter a judgment foreclosing the right to redeem "if the court finds that the sale [of the tax lien] is valid, and that *the tax lien has not been redeemed.*" (Emphasis added.) Guzman argues these statutes "without reservation clearly do not allow anyone to foreclose on a redeemed certificate or tax lien. The [l]aw makes no exceptions to this."

¶ 16 There is much force to Guzman's argument. The statutes Guzman relies on—A.R.S. §§ 42–18201 and 42–18204(A)—bar an action to foreclose the right to redeem if the tax lien has been redeemed. When Sun Valley paid the county treasurer the amounts necessary to redeem the 1999 tax lien, a

4. Before a purchaser of a tax lien may file a foreclosure action, it must notify the county treasurer and the owner of the property subject to the tax lien that it intends to file a foreclosure action. A.R.S. § 42–18202 (Supp.2005).

5. A tax lien may be redeemed before judgment is entered foreclosing the right to redeem. A.R.S. § 42–18206 (1999); *Friedemann v. Kirk*, 197 Ariz. 616, 618, ¶ 8, 5 P.3d 950, 952 (App.2000).

6. A.R.S. § 42–18204(A)(2) (Supp.2005) authorizes the court in a foreclosure action to direct the county treasurer to "execute and deliver to the party in whose favor judgment is entered ... a deed conveying the property...."

7. For purposes of this appeal, we have assumed, as did the superior court, that Guzman is Coastal's successor in interest and in a position to challenge Sun Valley's foreclosure of the 1999 tax lien.

redemption occurred and Sun Valley was not, under the plain language of the statutes, entitled to foreclose Coastal's right to redeem.

¶ 17 But Guzman's reliance on the statutes does not end this matter. Sun Valley argues that by paying the delinquent taxes on the property, it became equitably subrogated to the rights of the holder of the 1999 tax lien, including its right to foreclose Guzman's right to redeem. Sun Valley further asserts that, if we were to accept Guzman's position, Guzman would be unjustly enriched and the superior court's application of equitable subrogation was the proper remedy to avoid unjust enrichment. The competing arguments raised by the parties present issues of law which we review de novo. *Lamb Excavation, Inc. v. Chase Manhattan Mortgage Corp.*, 208 Ariz. 478, 480, ¶ 5, 95 P.3d 542, 544 (App.2004).

■■■ ¶ 18 Equitable subrogation is the "substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." *Mosher v. Conway*, 45 Ariz. 463, 468, 46 P.2d 110, 112 (1935); *see also Lamb Excavation*, 208 Ariz. at 480, ¶ 6, 95 P.3d at 544. In a practical sense, equitable subrogation works like an assignment. *Cf. State Farm Fire and Cas. Co. v. Knapp*, 107 Ariz. 184, 185, 484 P.2d 180, 181 (1971). It is, as the name reflects, an equitable doctrine designed to prevent injustice—the "mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it." *Mosher*, 45 Ariz. at 468, 46 P.2d at 112. Application of the doctrine depends upon the particular facts and circumstances of each case. *Id.* Subrogation can only be granted when an equitable result will be reached. *Id.*

It involves three elements: (1) A valuable right; (2) a person who owns the right; and (3) a person who seeks to be substituted in that ownership. There must exist a claim or obligation against the debtor; an original right to that claim on the part of

him in whose place substitution is sought, and some right belonging to him who seeks the substitution which will be protected thereby. So when one, being himself a creditor, pays another creditor, whose claim is preferable to his, it is held that the person so paying is subrogated to the rights of the other creditor.

*Id.* at 468–69, 46 P.2d at 112.

■■■ ¶ 19 Subrogation is not available to a person who has no rights to protect, or a "mere volunteer." *Id.* at 470, 46 P.2d at 113. Such a person

may not claim the right of subrogation, for one who, having no interest to protect, without any legal or moral obligation to pay, and without an agreement for subrogation or an assignment of the debt, pays the debt of another, is not entitled to subrogation, the payment in his case absolutely extinguishing the debt.

*Id.* A person is not a volunteer, however, if he pays the debt believing the debt must be paid to protect his interests, even though it may ultimately be determined payment was unnecessary. *Id.*

¶ 20 In asserting that, despite its redemption of the 1999 tax lien, it acquired the foreclosure rights of the 1999 lien holder by subrogation, Sun Valley principally relies on the Arizona Supreme Court's opinion in *Mosher*. There, the court applied the doctrine of equitable subrogation in the context of statutory liens.

¶ 21 In *Mosher*, three people each purchased a lien on the same parcel of real property; each lien arose out of the property owner's failure to pay street assessment bonds for a different year. 45 Ariz. at 465–67, 46 P.2d at 111–12. Although not stated explicitly by the court, the liens were not, under the statutes applicable to the bonds, in parity.[8] This is a significant point, as we subsequently explain. The purchaser of the second assessment lien ("B") redeemed the lien held by the purchaser of the first assessment lien ("A"). Subsequently, the property owner redeemed the second assessment lien

---

8. Operation of the liens in *Mosher* were discussed in more detail in *City of Phoenix v. Hughes*, 36 Ariz. 399, 286 P. 191 (1930). In *City*

*of Phoenix,* the court explained the holders of the bonds for the subsequent years held "inferior" liens. *Id.* at 403, 286 P. at 192.

purchased by B, and after that, B redeemed the third assessment lien held by "C." B's assignor then sued the property owner to foreclose the first and third assessment liens, even though they had been redeemed. The issue before the supreme court was whether the first and third assessment liens could be foreclosed even though they had been redeemed. *Id.* at 468, 46 P.2d at 112.

¶ 22 After analyzing the purpose and requirements of equitable subrogation, the court held B had become subrogated to the rights of A when B redeemed the first lien because B had done so to protect his second assessment lien position: B became "subrogated to the rights which [A] had acquired by his purchase against the land involved." *Id.* at 469, 46 P.2d at 112. Accordingly, although, like Sun Valley here, B had redeemed the first assessment lien, the court held the property "was still subject to the lien acquired by [A] under the first sale, and that such lien had passed to [B] by reason of his redemption." *Id.* at 470, 46 P.2d at 113.

¶ 23 The supreme court then determined what rights, if any, B had obtained when he redeemed the third assessment lien from C. *Id.* The court found this to be a "more difficult" question because when B redeemed the third lien, his own lien—the second assessment lien—had been extinguished by the owner's redemption. *Id.* The court recognized that because B held A's interest as a redemptioner and not as a purchaser it was questionable whether B's rights were superior to those of C. *Id.* "Such being the case," B was "justified in redeeming from [C] for the protection of his rights under [A's lien], even though it might ultimately be determined as a matter of law that such redemption was not necessary." *Id.* at 470–71, 46 P.2d at 113. Thus, the court held B had also become subrogated to the rights of C insofar as B had redeemed C's lien.[9] *Id.* at 471, 46 P.2d at 113.

9. Ultimately, the court held the superior court should not have heard the matter because the plaintiff had failed to follow the specified statutory procedure to obtain a deed to the property and remanded with instructions to dismiss. *Id.* at 475, 46 P.2d at 115.

10. Section 42–18118(C) states:

¶ 24 For a variety of reasons, Sun Valley's reliance on *Mosher* is misplaced. The liens in *Mosher* were not in parity. Thus, if B had not redeemed A's lien, B's lien would have been extinguished when A obtained a deed to the property. As the court in *Mosher* recognized, B was acting to protect and preserve the lien rights he had acquired.

¶ 25 Here, in contrast, the 1999 tax lien did not have priority over Sun Valley's 2002 tax lien; the two liens were in parity. *See supra* ¶ 4. Thus, unlike the situation in *Mosher*, Sun Valley did not need to redeem the 1999 tax lien to protect and preserve its 2002 tax lien. Instead, it redeemed the 1999 tax lien so it could foreclose Guzman's redemption rights without having to wait three years to do so. Equitable subrogation is designed to prevent injustice. Here, there was no injustice to prevent.

¶ 26 Second, application of equitable subrogation to the facts of this case would render other provisions of the tax lien system superfluous. As discussed above, a tax lien certificate holder may acquire the rights of another tax lien certificate holder through an assignment. A.R.S. § 42–18118(C).[10] An assignment vests in the assignee all of the assignor's rights, including the assignor's foreclosure rights.

¶ 27 Allowing a subsequent tax lien holder to acquire the rights of a prior tax lien holder through redemption and subrogation, instead of by assignment, would interfere with one of the benefits given to investors to encourage them to invest in tax liens. Because the purchaser of the earliest tax lien will have the earliest right to foreclose the property owner's redemption rights, that right may have independent value. It may allow the purchaser of the prior tax lien to charge a premium for assigning its tax lien. As we recognized in *Bauza*:

> The certificate of purchase, whether registered or paper or whether issued to this state or to a person, is assignable by endorsement or as provided by § 42–18121.01. An assignment, when noted on the record of tax lien sales in the office of the county treasurer vests in the assignee all the right and title of the original purchaser.

To function as intended, the tax lien sale and foreclosure process must motivate private investors to pay delinquent taxes, penalties, and interest on particular properties as an investment. Private investors will be willing to do so only if tax liens confer a bundle of rights that is both attractive and secure.

199 Ariz. at 342, ¶ 15, 18 P.3d at 136.[11]

¶ 28 Finally, we are unpersuaded by Sun Valley's argument that Guzman will be unjustly enriched if he is allowed to benefit from Sun Valley's payment of the 1999 taxes. As discussed above, Sun Valley redeemed the 1999 tax lien to obtain an advantage, not to protect its rights in the 2002 tax lien. Although Guzman should have paid the property taxes, the enrichment Sun Valley complains about was of Sun Valley's own doing.

¶ 29 Further, whether Guzman will be enriched by Sun Valley's redemption of the 1999 tax lien remains to be seen. Only if Guzman redeems the 2002 tax lien will Sun Valley be in a position to claim unjust enrichment.

¶ 30 In summary, Sun Valley was not equitably subrogated to the rights of the 1999 tax lien holder. We agree with Guzman—Sun Valley's redemption of the 1999 tax lien gave it "nothing to foreclose on" and the superior court should not have entered a judgment foreclosing the 1999 tax lien as it had already been redeemed.

## CONCLUSION

¶ 31 For the foregoing reasons, we vacate the judgment entered by the superior court, and remand for further proceedings consistent with this opinion.

CONCURRING: JAMES B. SULT, Presiding Judge, and PATRICIA A. OROZCO, Judge.

---

11. Of course, if the prior tax lien holder demands too great a premium, the subsequent tax lien holder can simply redeem the prior tax lien and deprive the prior tax lien holder of any premium. The tax lien system thus encourages competing tax lien holders to negotiate with each other (and the taxing authority) before foreclosure. *See id.* at 343–44, ¶¶ 22–24, 18 P.3d at 137–38.